# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD MANUFACTURING COMPANY, INC.,<br>    Plaintiff,<br><br>v.<br><br>KAREN RICHARD, individually and as representative of the Estate of Edward A. Richard, and<br>JOEL RICHARD, as representative of the Estate of Edward A. Richard,<br>    Defendants. | No. 3:17-cv-1444 (VAB) |

**RULING ON DEFENDANT KAREN RICHARD'S MOTION TO DISMISS AND/OR STAY**

Richard Manufacturing Company, Inc., ("Plaintiff ") filed this Complaint for Interpleader and Declaratory Relief, "seek[ing] clarity" as to payments for an executive compensation plan it had put in place for its former president against Karen Richard, Joel Richard, and Kimberly Chernecky (collectively "Defendants").[1] Compl. ¶ 25, ECF No. 1.

Karen Richard, in her individual capacity, moves to dismiss or, in the alternative, stay the proceedings, arguing that the Court should abstain given the pendency of three state court lawsuits addressing similar question of law. *See* Karen Richard's Mot. to Dismiss and/or Stay, ECF No. 17; Karen Richard's Mem. of Law in Support ("Richard Mem."), ECF No. 18.

For the reasons stated below, the motion to dismiss is **DENIED**, as is any request to stay these proceeding.

---

[1] Plaintiff filed a notice of voluntary dismissal on December 21, 2017, dismissing Joel Richard in his personal capacity and Kimberly Chernecky. *See* Notice, ECF No. 26.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This case addresses an executive compensation plan for Mr. Edward Richard, the now-deceased former president of Richard Manufacturing Company, Inc. ("RMCO"). Compl. ¶¶ 2, 6. RMCO is a Connecticut corporation, with its principal place of business in Milford, Connecticut. *Id.* ¶ 1. Joel Richard, a citizen and resident of California, and Kimberly Chernecky, a citizen and resident of Florida, are Mr. Edward Richard's children. *Id.* ¶¶ 3–4, 7. Karen Richard is Edward Richard's widow and a citizen and resident of Florida. *Id.* ¶¶ 2, 6. Both Karen Richard and Joel Richard are co-executors of Edward Richard's estate and sued in their individual and representative capacities. *Id.* ¶ 5.

**A.   Factual Background**

Edward Richard served as president of RMCO until his retirement on April 30, 2009. Compl. ¶ 2. At retirement, Mr. Richard allegedly sold his stock to his replacement, James Steponavich, and RMCO and Mr. Richard executed a "Supplemental Executive Retirement Plan and Agreement" ("SERP") to provide him with additional supplemental deferred compensation. *Id.* ¶¶ 2–3. Under the SERP, Mr. Richard allegedly received monthly payments, use of a car — including insurance, maintenance, and repair expenses — and enrollment in RMCO's health plan. *Id.* ¶ 5. Mr. Richard allegedly had a defined contribution plan and a defined benefit plan, in addition to the SERP. *Id.* ¶ 7.

The SERP provided that, if Edward Richard died before the end of the plan, all amounts would be "shall be payable in accordance with the terms thereof to such beneficiary or beneficiaries as Executive may have designated in writing and filed with Company . . . ." *Id.* ¶ 9. If Mr. Richard did not designate a beneficiary, the plan allegedly provided that "Executive's

spouse, if any, shall be entitled to purchase the automobile" and "shall receive COBRA benefits for the maximum statutory period at Company's expense." *Id.*

Mr. Richard allegedly died in Florida on May 9, 2012. *Id.* ¶ 6. RMCO claims that Karen Richard received funds from both the defined contribution and defined benefit plans as a named beneficiary. *Id.* ¶ 8. She also allegedly purchased Mr. Richard's vehicle. *Id.* ¶ 10. For the SERP benefits, however, RMCO alleges that Mr. Richard did not name a beneficiary and, instead, the payments since his death have been made to his estate. *Id.* ¶ 11. "At no time," Plaintiff maintains, "did Karen Richard file a claim with RMCO with respect to the SERP." *Id.* ¶ 17. RMCO alleges that such a claim would now be untimely under the SERP's claim procedure. *Id.* ¶ 18.

According to RMCO, Edward Richard's will was admitted to probate in Florida in 2012. *Id.* ¶ 13. Both Karen Richard and Joel Richard are co-executors of the estate. *Id.* ¶ 5. Karen Richard allegedly filed a claim against the Estate, claiming that she was entitled to be a beneficiary of the SERP under her prenuptial agreement. *Id.* ¶ 15. The probate court, however, struck the claim as untimely. *Id.* ¶ 16.

### B.     Procedural History

On August 25, 2017, Plaintiff filed the Complaint for Interpleader and Declaratory Relief, "seek[ing] clarity as to whom future SERP payments should be directed, as well as confirmation that the prior SERP payments were correctly distributed to the Estate." Compl. ¶ 25. RMCO noted two pending lawsuits, and additional "correspondence to counsel for the Estate indicated [Karen Richard's] intention to file suit against RMCO, James Steponavich and the Estate" regarding SERP funds. *Id.* ¶¶ 16, 21–22.

As a result of the litigation, RMCO claims it has "no personal interest in the SERP payments" but "seek[s] to avoid multiple liability due to conflicting claims against the SERP

3

payments that have been made, as well as the future SERP payments." *Id.* ¶ 26. "Plaintiff seeks clarity as to whom future SERP payments should be directed, as well as confirmation that the prior SERP payments were correctly distributed to the Estate." Plaintiff requests "each Defendant be restrained from commencing or pursing any further action" against RMCO," and that the Court clarify who has access to proceeds from the SERP. *See* Compl. at 6.

RMCO originally sued Karen Richard, as well as Joel Richard and Kimberly Chernecky. Other than Karen Richard, "[t]he remaining defendants in this action are representatives and/or heirs" that "believe all prior SERP payments were properly paid . . . and should be continued to be paid to the Estate . . . ." *Id.* ¶ 24.

On November 29, 2017, Joel Richard filed an Answer and counter-claim in his capacity as co-executor of the Estate. *See* Def. Joel Richard Answer and Counterclaim, ECF No. 16. In his counterclaim, he alleged breach of contract claims against RMCO. *Id.* at 6. He maintains that RMCO had "made monthly payments to the Estate of the payments due under the SERP in the amount of $20,833.33 each month, but recently ceased making those payments." *Id.* He alleges that the Estate has been damaged by the cessation of payment, and requests a declaration that the Estate is entitled to all payments under the SERP and damages. *Id.* at 7.

Karen Richard moved to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. She argues that this Court should decline to exercise its jurisdiction under the abstention doctrine described in *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491 (1942). *See generally* Def. Mem in Support ("Def. Mem."), ECF No. 17.

Karen Richard claims there are currently three matters pending in Connecticut state court.[2] First, Karen Richard filed a lawsuit against Mario Zangari and Zangari Cohn Cuthbertson in the Superior Court for the Judicial District of New Haven on June 8, 2016. *See* Compl., *Richard v. Zangari et al*, Richard Mem., Ex. 1, ECF No. 18-1. Karen Richard alleges that she had retained defendants "for the purposes of protecting her rights under Mr. Richard's Estate . . . ." *Id.* ¶ 10. She alleges that they "negligently and carelessly, failed to file any claim on her behalf against the Estate for the profit sharing and pension benefit plan funds within the time prescribed by the Probate Division" and she seeks damages. *Id.* ¶¶ 15–17.

Second, Karen Richard sued RMCO and James Steponavich in the Superior Court for the Judicial District of New Haven on August 2, 2017. *See* Compl., *Richard v. Richard Manufacturing, Co. Inc. and James Steponavich*, Richard Mem., Ex. 2, ECF No. 18-2. She alleges six counts of violations of common law and Connecticut statutes by RMCO, all related to the defendants' failure to pay Ms. Richard the retirement benefits owed under the SERP. *See generally id*.

Finally, after the filing of this lawsuit, Karen Richard filed a declaratory judgment action in state court on October 12, 2017 against all the defendants in this case: Joel Richard, both individual and as a representative of the estate, herself, as representatives of the estate, RMCO, and Kim Chernecky. *See* Compl., *Richard v. Richard et al*., Richard Mem., Ex. 3, ECF No. 18-3. She also included as defendants Mario Zangari, James Steponavich, and Zangari Cohn Cutherbertson, P.C., and Zangari Cohn Cuthbertson Duhl & Grello, P.C. *Id.* Karen Richard

---

[2] The Court may properly take judicial notice of docket sheets and public filings in other court cases. *See Mangifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (finding no error in district court's reliance on a docket sheet in another case because "docket sheets are public records of which the court could take judicial notice") (citation omitted).

alleges that her deceased husband had designated her a beneficiary of the retirement plan in 2010. *Id*. ¶ 17. As a result of this designation, Ms. Richard alleges she had "a legal right of possession, dominion and ownership with respect to the retirement benefits owed and due to her pursuant to the terms of the SERP and the 2010 beneficiary designation, which was effective at the time of Edward Richard's death." *Id*. ¶ 18. She seeks a declaratory judgment stating she "is owed and due the retirement benefits under the SERP," as well as injunctive relief addressing future payments to the estate and compelling all future payments to her. *Id*. at 6.

Ms. Richard argues that would each of these three cases require the courts in those cases to determine liability under the SERP. *See, e.g., id.* at 5 (noting that "the same principal question is now at the core of [two of the lawsuits]: Whether the 2010 beneficiary designation is applicable to the SERP funds."). She argues that, because it is primarily a declaratory judgment action, the *Brillhart* and *Wilton* abstention standard applies, and it is appropriate here to avoid inconsistent judgments and because the three cases in state court ensure determination of each parties' liabilities. *Id.* at 13, 17.

Joel Richard, in his capacity as representative of the Estate, objected to the motion to dismiss. *See* Def. Joel Richard, As Representative of the Estate of Edward A. Richard's, Obj. to Mot. to Dismiss And/Or Stay ("Estate Obj."), ECF No. 24. RMCO did not file separate briefing arguing that the motion should be denied, but rather stated that it had "reviewed the opposition filing of the defendant, Joel Richard . . . and hereby concurs with and adopts the arguments, positions, and supporting authority cited therein in opposition to the defendant Karen Richard's Motion to Dismiss." Pl. Richard Manufacturing Company, Inc's Obj. to Mot. to Dismiss And/Or Stay, ECF No. 25.

Joel Richard argues that the parties seek more than "pure declaratory relief." Estate Obj. at 7. Instead, according to Mr. Richard, the existence of coercive relief means that the discretionary standard cannot apply and *Colorado River*'s more exacting "extraordinary circumstances" test is the appropriate standard. He argues that, regardless of which standard the Court adopts, however, abstention is not appropriate in this case. *Id.* at 8–12.

Additional, Joel Richard notes that all three cases pending in state court were transferred to the Connecticut Superior Court's complex litigation docket and assigned to Judge Lager. Estate Mem. at 5. Judge Lager issued an order staying each case, noting that "the court has determined that the interests of justice require a stay . . . pending the outcome of the proceedings in the United States District Court for the District of Connecticut in the case of Richard Manufacturing Company, Inc. v. Richard et al., Docket No. 3:17-cv-1444-VAB." *See* Orders, Estate Mem., Ex. A.

## II. STANDARD OF REVIEW

Karen Richard moves to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Rule 12(b)(1)

In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, a court "must accept as true all material factual allegations in the complaint[,]" but need not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citations omitted).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A court will dismiss any claim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

All of the factual allegations in the complaint will be taken as true. *Iqbal*, 556 U.S. at 678. The factual allegations will also be viewed in the light most favorable to the plaintiff, and all inferences will be drawn in favor of the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering motions to dismiss under Rule 12(b)(6) generally limit its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## III. DISCUSSION

This case requires the Court to determine which of two abstention standards to apply and whether this case warrants abstention.

Karen Richard argues that the Court should evaluate her request for abstention under the discretionary standard first adopted in *Brillhart v. Excess Ins. Co.* Richard Mem. at 13. She argues that the issues central to this case, and the three pending Connecticut state cases, are best resolved in state court, and therefore urges this Court to abstain. *Id.* at 13. Joel Richard argues that the discretionary standard is not appropriate because the parties seek relief aside from "pure declaratory relief." Estate Obj. at 7. He argues that *Colorado River*'s "extraordinary circumstances" test is the appropriate standard, and that Ms. Richard cannot meet this exacting standard. *Id.* at 8–10.

Ultimately, the Court must apply the more exacting *Colorado River* standard, given Joel Richard's counterclaim requesting damages. Furthermore, after considering the six *Colorado River* factors, the Court will not abstain from hearing this case, and therefore will deny Ms. Richard's motion.

### A. Abstention in Declaratory Relief Cases Under *Brillhart* and *Wilton*

As the U.S. Supreme Court has noted, federal courts have "the virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Only in "exceptional" circumstances may courts

9

"permit[] the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration . . . ." *Id.* at 818.

The Supreme Court first articulated one of those exceptions, pertaining to declaratory judgments and other discretionary forms of relief, was by in *Brillhart v. Excess Ins. Co. of America* and re-affirmed it in *Wilton v. Seven Falls Co*. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) (affirming district court's abstaining from declaratory judgment action); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) ("In sum, we conclude that [*Brillhart*] governs this declaratory judgment action and that district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion.").

In *Brillhart*, an insurer sought a declaratory judgment in federal court while a garnishment proceeding, addressing the same issues, was pending in state court. 316 U.S. at 493–94. The Supreme Court upheld the dismissal of the case, noting that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* at 495. It rested its decision primarily on the discretion granted district courts under the Declaratory Judgment Act: "Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction." *Id.* at 494. A district court should therefore determine whether "the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Id*. The court could then exercise its discretion and abstain in circumstances where those state court proceedings could adequately address the issues. *Id.* at 496–98.

The Second Circuit has also applied the *Brillhart* and *Wilton* holdings to other discretionary forms of relief. For example, the court noted that "the rationale underlying *Wilton*'s holding, namely, that the district court is afforded broad discretion under the [Declaratory Judgment Act] is equally applicable to a claim for a declaration of non-coverage under an insurance policy raised in the context of a statutory interpleader, as it is to a claim for declaratory relief raised in any other context." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997). It thus rejected an insurance company's argument that the abstention doctrine was limited only to cases where the Declaratory Judgment Act was explicitly invoked, and applied the discretionary standard to interpleader actions. *Id.*

*Brillhart* and *Wilton*'s discretionary standard does not apply, however, in cases where both declaratory and coercive relief is sought. *See, e.g.*, *Village of Westfield v. Welch's*, 170 F.3d 116, 125 n.5 (2d Cir.1999) ("*Wilton* does not apply here. Although Welch did seek a declaration of rights under the sewer agreement and the FWPCA, the federal action did not seek purely declaratory relief. Rather, the Village sought payment of the unpaid user charges against Welch. Welch, in turn, contested the payment and sought damages caused by the Village's conduct."); *Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) ("We have stated before, and we now hold, that '*Wilton* does not apply where, as here, a plaintiff does not seek purely declaratory relief, but also . . . seeks damages caused by the defendant's conduct.'") (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 (2d Cir. 2012)).

Instead, "[i]n an action seeking declaratory relief and monetary damages, as here, the Second Circuit directs that a court should apply the *Colorado River* abstention doctrine." *InteliClear, LLC v. Victor*, No. 3:16cv1403 (JBA), 2017 WL 2225212, at *2 (D. Conn. May 18,

2017); *see also Kanciper*, 722 F.3d at 93 (applying *Colorado River* standard to mixed claims for relief). The *Colorado River* standard is stricter, and abstention is warranted "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." 424 U.S. at 813–14 (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89).

Joel Richard, one of the Defendants, argues that the *Colorado River* standard, and not the more discretionary *Brillhart*/*Wilton* standard, applies to Plaintiff's claims in this case. Estate Obj. at 1. He points to three forms of relief requested in conjunction with this action that he claims requires *Colorado River*'s application. First, he argues that *Brillhart* and *Wilton* should be read to only apply to the Declaratory Judgment Act, and that the "Act is not invoked anywhere in the Complaint." *Id.* at 6. But there is no requirement that the Declaratory Judgment Act must be invoked in order for the *Brillhart/Wilton* to apply. *See, e.g.*, *AM Broadband, LLC v. First Fin. Ins. Co.*, No. 3:08-CV-378(CFD), 2009 WL 801646, at *3 (D. Conn. Mar. 25, 2009) ("As First Financial argues, declaratory relief need not even be requested by specific reference to the Declaratory Judgment Act for the principles of *Brillhart* and *Wilton* to apply to an action for declaratory relief.").

Second, he argues that *Brillhart* does not apply because the original complaint "seeks more than pure declaratory relief." Estate Obj. at 7. Karen Richard responds that the "fact that RMCO requests additional relief to which it is not entitled in an interpleader action does not change the underlying nature of the action alleged in the operative complaint." Richard Rep. Br.

at 2 (emphasis in original). Because it is an interpleader action, she argues, *Nat'l Union Fire Insurance* requires that this Court apply the discretionary standard. *Id.*[3]

The Court does not need to address this second argument because there is a third form of relief at issue — Joel Richard's counterclaim for breach of contract — which is dispositive. In his counterclaim, Mr. Richard claims that RMCO breached its contract when it ceased making monthly payments to the estate. *See* Def. Joel Richard Answer and Counterclaim, ECF No. 16. He requests a declaration that the Estate is entitled to all payments under the SERP and damages. *Id.* at 7. In other words, he seeks coercive relief.

Both the Second and the Fifth Circuits have included counterclaims in their analysis. In *Village of Westfield*, the Second Circuit included the fact that a defendant "in turn, contested the payment and sought damages caused by the Village's conduct" in determining that the "federal action did not seek purely declaratory relief." *Village of Westfield*, 170 F.3d at 125 n.5. And the Court of Appeals for the Fifth Circuit, which applies a similar standard bright line rule as the Second Circuit, also determined that a counterclaim for coercive relief would require a district court to apply the *Colorado River* standard. *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009). There, the Fifth Circuit noted that it was "persuaded that in the present case, Barnett's counterclaim for coercive relief should be considered when determining the nature of

---

[3] Karen Richard relies extensively on *Nat'l Union Fire Insurance*, which she argues is "controlling Second Circuit authority" for this case. Richard Rep. Br. at 2. As addressed below, however, *Nat'l Union Fire Insurance* does not control in cases where there are mixed forms of relief sought — both coercive and declaratory. Instead, the controlling case in the Second Circuit is *Village of Westfield*, decided two years after *Nat'l Union Fire Insurance*, which Karen Russell does not address, much less distinguish.

13

the action[,]" in part because "Barnett's claims for damages would be properly before the district court had he been the first to file the action." *Id.*[4]

Karen Richard argues, however, that "the existence of the breach of contract counterclaim, which is also governed by state law, does not change the fact that the *Wlton/Brillhart* standard should apply" because that claim "hinges on the outcome of the declaratory judgment claim . . . ." Richard Rep. Br. at 2. She cites to caselaw from outside of the Second Circuit, appearing to argue that this Court should apply the "heart of the action" test. *Id.* at 2–3 (citing caselaw from the Eastern District of Wisconsin, the Eastern District of Pennsylvania, and the Court of Appeals for the Fourth Circuit).

The "heart of the action test," however, is not the law of this Circuit. *See, e.g.*, *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 228 (3d Cir. 2017) (noting three separate approaches to question but finding that "[t]he United States Courts of Appeals for the Second, Fourth, and Fifth Circuits have adopted a bright line rule that prioritizes a federal court's duty to hear claims for legal relief over its discretion to decline jurisdiction to hear declaratory judgment actions.") (citing *Vill. of Westfield*, 170 F.3d at 125 n.5); *Massachusetts Biologic Labs. of the Univ. of Massachusetts v. MedImmune, LLC*, 871 F. Supp. 2d 29, 33–34 (D. Mass. 2012) ("The Second, Fifth and Tenth Circuits hold that the Colorado River standard governs all claims whenever an action includes both declaratory and coercive claims for relief" and noting other circuits that apply the "heart-of-the action" test).

---

[4] Likewise, it is likely that Mr. Richard's counterclaim would have independent jurisdictional grounds under this Court's diversity jurisdiction, as the parties are diverse and the amount in controversy is greater than $75,000. Even were this Court to dismiss the primary complaint, then, the Estate could separately maintain its breach of contract action. The Court would then have to adjudicate the very questions that Ms. Richard cites as justification for abstaining.

As a result, the counterclaim presents a claim for coercive relief and "*Wilton* does not apply here" as a result. *Vill. of Westfield*, 170 F. 3d at 125 n.5; *accord. Kanciper*, 722 F.3d at 93–94. The Court will apply the stricter *Colorado River* standard in evaluating Karen Richard's request for abstention, and not the discretionary *Brillhart/Wilton* standard.

### B. *Colorado River* Abstention

Under *Colorado River*, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Courts considering a *Colorado River* abstention request must consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp.*, 673 F.3d at 100–01. "When a given factor is "facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Id.* (quoting *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).

These factors weigh in favor of retaining jurisdiction in this case.[5] There is no property at issue here over which the state court has assumed jurisdiction. *Cf. Village of Westfield*, 170 F.3d at 122 ("This action was not an in rem action and did not involve jurisdiction over property. We

---

[5] In her reply brief, Karen Richards does not address the application of the *Colorado River* factors, only whether the standard should be applied in the first place.

15

have held that the absence of a res 'point[s] toward exercise of federal jurisdiction.'") (quoting *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)). The first factor therefore weighs in favor of retaining jurisdiction.

The federal forum is not any less convenient for the parties. Plaintiffs are a Connecticut corporation; Defendants are citizens of Florida and California. Compl. ¶¶ 1–4. There should be no meaningful difference for the parties to litigate in Bridgeport as opposed to Waterbury. The second factor also weighs in favor of retaining jurisdiction. *See Village of Westfield*, 170 F.3d at 122 ("We have held that where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court.") (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995)).

The third factor requires this Court to determine "whether staying or dismissing the federal action will avoid piecemeal litigation[.]" *Niagara Mohawk Power Corp.*, 673 F.3d at 100. Karen Richard argues that this Court's decision would implicate the central issue in each of the three pending state court actions, but still seeks a return to state court. Richard Mem. at 16 ("In each state court action including Richard's declaratory judgment action, the same threshold question is at issue: Whether the 2010 beneficiary designation is applicable to the SERP funds."). Joel Richard argues that this action would both avoid piecemeal litigation by proceeding in one action instead of three, but ultimately fail to resolve all three of the pending state cases. *Compare* Estate Obj. at 9 ("If this court declines jurisdiction, this dispute will return to the Connecticut Superior Court where *three separate actions* are currently pending.") *with* Estate Obj. at 12 ("In addition, Karen goes to great lengths to argue that the question of who is entitled to the SERP payments is central to all of the state court actions when, in fact, it is not.").

There are three pending state cases, with different parties, which will ultimately address the question of the 2010 beneficiary designation and whether the SERP funds were properly distributed. *See* Richard Mem. at 16–17 (describing posture of three state cases). The posture here thus raises the possibility that there is "a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. But since the three Connecticut Superior court cases have been stayed pending the outcome of this case, *see* Orders, Estate Mem., Ex. A, ECF No. 24-1 (staying all three cases "in the interest of justice . . . pending the outcome" of this case),the third factor thus weighs in favor of retaining jurisdiction.

The fourth factor "looks at the chronological order in which the actions were filed." *De Cisneros*, 871 F.2d at 308. "But the inquiry is not so simplistic; the relative progress of the federal and state proceedings must be carefully examined." *Id.*; *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21 ("Moreover, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").

Two out of three of the state cases were filed before this action, and Plaintiff had notice that the third was going to be filed. *See* Compl. ¶ 22 ("Karen Richard has also sent correspondence to counsel for the Estate indicating her intention to file suit against RMCO, James Steponavich and the Estate."). Neither the federal case nor the state cases have progressed very far, however, and certainly not to resolution. In fact, the state cases have all been stayed pending resolution of this case. *See* Orders, Estate Mem., Ex. A, ECF No. 24-1. Therefore, while normally the earlier filing might counsel in favor of abstention here, the relative progress in both cases is identical. The fourth factor is therefore neutral, and must therefore be balanced in favor

of retaining jurisdiction. *Niagara Mohawk Power Corp.*, 673 F.3d at 100–01 (explaining a neutral factor should be considered a basis for retaining jurisdiction).

The fifth consideration is "whether federal law provides the rule of decision on the merits." *Vill. of Westfield*, 170 F.3d at 124. "[T]he presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Id.*

Joel Richard does not contest that "[t]he fifth factor nominally weighs in favor of declining jurisdiction," nor can he. *See* Estate Obj. at 10. The case is in federal court because of this Court's diversity jurisdiction, Compl. § B, and it is, of course, ancient learning that a federal court sitting in diversity applies state law. *Accord Erie Railroad Company v. Tompkins,* 304 U.S. 64 (1937). The issues are not "novel or particularly complex," however, and therefore this case would not "strongly advise dismissal[.]" *Vill. of Westfield*, 170 F.3d at 124.

Finally, this case does not implicate Plaintiff's federal rights, but the Court has no doubt that a Connecticut court could adequately protect RMCO's — a Connecticut corporation — rights. It notes that at least one out-of-state defendant, however, seeks this Court's jurisdiction, even if the other out-of-state defendant seeks a return to state court. At the very least, then, the sixth factor is also neutral.

Given the weighing of each of the *Colorado River* considerations, the Court will continue to exercise jurisdiction here. The first four factors favor retaining jurisdiction and, while the fifth favors abstaining, it does not outweigh the other considerations. The Court therefore will not abstain, and Karen Richard's motion to dismiss is denied. To the extent Karen Richard seeks a stay, that request is also denied for the same reasons as the motion to dismiss.

## IV. CONCLUSION

For the reasons stated above, Defendant Karen Richard's Motion to Dismiss and/or Stay, ECF No. 17, is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of July, 2018.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge