## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD MANUFACTURING CO., INC.,
    *Plaintiff,*

v.                                                    No. 3:17-cv-01444 (VAB)

KAREN RICHARD, *et al.*,
    *Defendants.*

## RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT, MOTION TO DISMISS, AND MOTION FOR LEAVE TO AMEND

Richard Manufacturing Company, Incorporated ("Plaintiff," "RMCO" or the "Company") has sued Karen Richard ("Defendant" or "Mrs. Richard") and Joel Richard, on behalf of the Estate of Edward A. Richard ("Estate"), for interpleader and declaratory relief and has asked the Court to determine who is entitled to payments under a Supplemental Executive Retirement Plan and Agreement (the "SERP agreement," or the "Plan") between RMCO and Edward Richard ("Mr. Richard" or "Decedent"). *See* Compl., ECF No. 1 (Aug. 25, 2017). Mrs. Richard, Decedent's widow, and Joel Richard, Decedent's child, are co-executors of the Estate. *Id.* ¶¶ 5-7.

Joel Richard, in his capacity as co-executor of the Estate,[1] has filed a breach of contract counterclaim against RMCO. Answer and Counterclaim, ECF No. 16 (Nov. 29, 2017) ("Estate Answer"). Mrs. Richard also has filed several counterclaims against RMCO and a crossclaim against the Estate. *See* Def.'s Answer to Compl. for Interpleader and Declaratory Relief,

---

[1] Given the overlapping last names of the parties, and that Joel Richard remains in the case only in his capacity as co-executor of the Estate, the Court refers to him as the "Estate," or, in rare cases, "Joel Richard," and to Edward Richard as "Mr. Richard" or "Decedent." For the same reason, though both Joel Richard and Mrs. Richard are nominally Defendants in this interpleader action, the Court refers in its naming conventions to Joel Richard as the "Estate" and Mrs. Richard as a "Defendant" and to RMCO as "Plaintiff," in order to avoid confusion.

1

Counterclaim and Crossclaim, ECF No. 37 (Mar. 6, 2019) ("Def.'s Answer").

Both the Estate and RMCO have moved for summary judgment. *See* Def. Joel Richard as Co-Executor of the Estate of Edward A. Richard's Mot. for Summ. J., ECF No. 84 (Mar. 12, 2020) ("Estate MSJ") (moving for summary judgment on both the Complaint and Mrs. Richard's crossclaim); Def. Joel Richard as Co-Executor of the Estate of Edward A. Richard's Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 85 (Mar. 12, 2020) ("Estate Mem."); Pl. Richard Manufacturing Co., Inc.'s Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 87 (Mar. 13, 2020) ("Pl.'s MSJ") (moving for summary judgment on the Complaint); Pl. Richard Manufacturing Co., Inc.'s Mem. of Law in Supp. of its Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 87-1 (Mar. 13, 2020) ("Pl.'s Mem."). RMCO has also moved to dismiss both the Estate and Mrs. Richard's counterclaims. *See* Pl.'s MSJ.

Mrs. Richard opposes these motions. *See* Karen Richard's Mem. in Opp'n to the Estate's Mot. for Summ. J., ECF No. 100 (May 18, 2020) ("Def.'s Opp'n to Estate MSJ"); Karen Richard's Mem. in Opp'n to RMCO's Mot. for Summ. J. and Mot. to Dismiss, ECF No. 102 (May 18, 2020) ("Def.'s Opp'n to Pl.'s MSJ").

Mrs. Richard also seeks leave to amend her counterclaims against RMCO. Mot. to Amend Karen Richard's Counterclaim, ECF No. 106 (May 22, 2020) ("Mot. to Amend").

For the following reasons, RMCO's and the Estate's motions for summary judgment are **GRANTED**; RMCO's motion to dismiss is **GRANTED** as to both Mrs. Richard's and the Estate's counterclaims, and Mrs. Richard's motion for leave to amend is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.  Factual Background

Parties

RMCO is incorporated and has its principal place of business in Connecticut. Pl. Richard Manufacturing Co., Inc.'s Local Rule 56(a)(1) Statement of Undisputed Facts in Supp. of Mot. to Dismiss and/or Mot. for Summ. J., ECF No. 88 ¶ 1 (Mar. 13, 2020) ("Pl.'s SMF").

Until 2009, Edward A. Richard served as the president of RMCO. *Id.* ¶ 8; Karen Richard's Local Rule 56(a)(2) Statement of Facts in Opp'n to Summ. J. ¶ 8, ECF No. 101 (May 18, 2020) ("Def.'s Opp'n to Estate SMF"); Karen Richard's Local Rule 56(a)(2) Statement of Facts in Opp'n to Summ. J. Filed by RMCO, ECF No. 103 at 2 ¶ 8 (May 18, 2020) ("Def.'s Opp'n to Pl.'s SMF").

In December 2006, Mr. and Mrs. Richard were married. Def.'s Opp'n to Estate SMF at 26 ¶ 9.[3] Mrs. Richard is the widow of Mr. Richard, *id.* ¶ 5, and resides in Florida, *id.* ¶ 2.

Joel Richard is Mr. Richard's son, *id.* ¶ 6, and resides in California, *id.* ¶ 3.

Karen Richard and Joel Richard are co-executors, or personal representatives, of the Estate. *Id.* ¶ 4. The Estate is being probated in the Probate Division of the Circuit Court of

---

[2] Unless otherwise noted, these facts are not in dispute.

[3] On or about October 13, 2006, before they married, Mrs. Richard (then Karen Olson) and Mr. Richard entered into a prenuptial agreement, and Mr. Richard agreed to designate Mrs. Richard "as beneficiary of any and all profit sharing and pension plans of which he is an owner at the time of his death." Compl. at 2 ¶ 1; Pl.'s SMF ¶ 7; Prenuptial Agm't, attached as Ex. 12 to Def.'s Opp'n to Estate MSJ (the "Prenuptial Agreement"). A copy of the Prenuptial Agreement also is attached to the Estate's statement of material facts, *see* Def. Joel Richard, as Co-Executor of the Estate of Edward A. Richard's, Local Rule 56(a)(1) Statement, ECF No. 86-2 (Mar. 12, 2020) ("Estate SMF"), as Exhibit B. Mrs. Richard "objects to the authenticity of the Prenuptial Agreement submitted by the Estate to which it cites, as it fails to include Exhibits A and B attached to the Agreement." Def.'s Opp'n to Estate SMF ¶ 5. Mrs. Richard's provided copy of the Agreement includes these exhibits, which purport to show Mr. Richard's financial information, including assets, liabilities and net worth, real estate holdings, and life insurance policies, as well as a statement of Mrs. Richard's assets, liabilities, and net worth. Prenuptial Agreement at 9-12. As discussed below, the viability of any legal claim by Mrs. Richard under the Prenuptial Agreement is not before this Court, but has been addressed in a state court in Florida.

Monroe County in Florida. *Id.*

Edward Richard's Retirement and Pension Plans

During his time with RMCO, Mr. Richard participated in three retirement and/or pension plans: the "Defined Benefit Pension Plan,"[4] the "Profit Sharing Plan," and the Supplemental Executive Retirement Plan ("SERP") agreement. *See* Pl.'s SMF ¶ 14.

The Defined Benefit Pension Plan was available to all eligible employees at RMCO, *see* Defined Benefit Pension Plan, and provided retirement benefits to participants equal to the participant's accrued benefit, based on the number of years of service with the Company, *id.* at 19-22. Under the Defined Benefit Pension Plan, the beneficiary of death benefits under the plan is the decedent's surviving spouse, unless another beneficiary was designated. *Id.* at 23. On March 27, 2006, benefit accruals under the Defined Benefit Pension Plan were frozen. *Id.* at 1.

The Profit Sharing Plan is a "type of qualified retirement plan commonly referred to as a profit sharing plan" intended to provide participants "with additional income for retirement." Richard Manufacturing Company, Inc., Profit Sharing Plan, Summary Plan Description, ECF No. 116-1 at 10 (June 22, 2020) ("Profit Sharing Plan").[5] Under the Profit Sharing Plan, eligible employees receive both employee rollover contributions, as well as a share of discretionary employer contributions the amount which depends on the compensation received by the given participant and assigned classifications. *See id.* at 11–12.

In 1996, 1998, and 2006, Mr. Richard signed beneficiary designation forms for the

---

[4] The parties dispute whether the plan is titled the "Defined Benefit Pension Plan" or simply the "Defined Benefit Plan." *See* Def.'s Opp'n to Pl.'s MSJ at 17 n.6; Estate's Reply to Karen Richard's Mem. in Opp'n to Estate's Mot. for Summ. J., ECF No. 116 at 4 n.2 (June 22, 2020) ("Estate Reply"). The document, however, is titled "Defined Benefit Pension Plan," and so the Court adopts this term. *See* Defined Benefit Pension Plan, ECF No. 85-10 at 1.

[5] As several documents are included as part of ECF No. 116-1, citations to the Profit Sharing Plan refer to the ECF-numbered pages. Citations to all other documents, however, where ECF and internal pagination are inconsistent, refer to the document's internal pagination.

Defined Benefit Plan. Def.'s Opp'n to Pl.'s SMF at 21-22 ¶ 13 (citing Exs. 2-5 to Def.'s Opp'n to Pl.'s MSJ (ECF Nos. 102-3, 102-4, 102-5)). On September 5, 2006, Mr. Richard named Mrs. Richard the primary beneficiary of the Defined Benefit Plan. *Id.* at 22 ¶ 15.

In 2002, 2006, and 2007, Mr. Richard signed beneficiary designation forms for the Defined Profit Sharing Plan and named Mrs. Richard the primary beneficiary of that plan on each form. *Id.* at 22 ¶ 16 (citing Exs. 6-8 to Def.'s Opp'n to Pl.'s MSJ (ECF Nos. 102-6, 102-7, 102-8)). These forms referred to the "Profit Sharing Plan" in both the title and the text. *Id.* at 22 ¶ 17 (citing Exs. 6-7).

On April 30, 2009, RMCO and Mr. Richard entered into the SERP agreement. Def.'s Opp'n to Pl.'s SMF at 20 ¶ 4; Pl.'s SMF ¶ 10 (citing Ex. A to Def. Joel Richard as Co-Executor of the Estate of Edward A. Richard's Local Rule 56(a)(1) Statement, ECF No. 86-1 at 1 ¶ 1 (Mar. 12, 2020) ("SERP").).

The SERP is "an unfunded and unsecured plan maintained by [RMCO] primarily for the purpose of providing supplemental deferred compensation for a select and key member of [RMCO]'s executive management employees."[6] SERP at 1 ¶ 1.

The SERP contains the following provision, defining Mr. Richard as the "Executive":

> In consideration for Executive's past services to Company, including Executive's long tenure as President of Company and Executive's skill and experience in performing such services for the benefit of Company, and for Executive entering into the covenants contained in this Agreement, Company shall (i) pay Executive one hundred eighty-eight (188) monthly payments of . . . $20,833.33[] each, with each payment due on or before the first day of the month, for the period commencing on the first day of the first month

---

[6] The SERP is a type of plan often referred to as a "top hat" plan, "designed to provide certain employees with payments over and above the benefits provided by 'qualified' employee benefit plans – *i.e.*, plans that are eligible for favorable tax treatment, such as [the company's] standard retirement plan." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 217 (2d Cir. 2006). These plans are "exempt from many provisions of ERISA, including the participation and vesting, funding and fiduciary responsibility requirements, but like qualified plans, they are subject to disclosure requirements, to civil enforcement, and to the duty to have a claims procedure." *Id.* (internal citations omitted). ERISA is the acronym for the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1001 *et seq.*

> following Executive's separation from service (as defined in Section 2(b) below) through December 1, 2024 (the "Compensation Period") . . .

*Id.* at 2–3 ¶ 2(a).

Section 2(b) of the SERP defined "separation of service" to mean:

> "the complete and intended termination of the employment relationship between Executive and Company and all corporations or entities or organizations with which Company would be considered a single employer pursuant to subsections (b) and (c) of Section 414 of the Code determined in conformance with Section 409A of the Code and Section 1.409A-1(h) of the Final Treasury Regulations or corresponding provisions in future guidance issued by the IRS or Department of the Treasury.

*Id.* at 3 ¶ 2(b).

The SERP also provided that:

> [i]n the event of Executive's death prior to the expiration of the Compensation Period: (i) all amounts payable by Company pursuant to Section 2(a)(i) shall be payable in accordance with the terms thereof to such beneficiary or beneficiaries as Executive may have designated in writing and filed with Company or, in the absence of such designation, to Executive's estate; (ii) Executive's spouse, if any, shall be entitled to purchase the automobile referred to in Section 2(a)(ii) from Company at book value; and (iii) Executive's spouse, if any, shall receive COBRA benefits for the maximum statutory period at Company's expense.

*Id.* at 3 ¶ 2(c).

At some point in 2009, Mr. Richard sold his interest in RMCO to his son-in-law, James Steponavich. Estate SMF at 2 ¶ 7. RMCO and the Estate allege that this sale occurred on April 30, 2009, and in connection with the sale, Mr. Steponavich took over as President of RMCO. Pl.'s SMF ¶ 8; Estate SMF ¶¶ 7-8. Mrs. Richard alleges that Mr. Richard instead sold his interest in RMCO to Mr. Steponavich, effective January 1, 2009, and that Mr. Steponavich took over as President that same day. Def.'s Opp'n to Pl.'s SMF at 2 ¶ 8. As part of the sale of the company, a

promissory note and stock purchase agreement were issued. Pl.'s SMF ¶¶ 9-10.

On either April 30, 2009, or May 1, 2009, Mr. Richard retired from RMCO. *See* Pl.'s SMF ¶ 8; Estate SMF ¶¶ 7–8; Def.'s Opp'n to Pl.'s SMF at 2 ¶ 8; 21 ¶ 5. The Estate alleges that the SERP was part of Mr. Richard's sale of RMCO to Mr. Steponavich; the roughly $4 million value of the SERP, along with a $6 million note to Mr. Richard, made up the $10 million purchase price of RMCO; and that Mr. Richard told Mr. Steponavich that he would not have sold RMCO without the deferred compensation provided by the SERP. Estate SMF ¶¶ 15-17.

On May 21, 2010, Mr. Richard executed RMCO's Defined Beneficiary Designation Form in which he designated Mrs. Richard as the "primary beneficiary."[7] Estate SMF ¶ 10 (citing Ex. D to Estate Mem., ECF No. 85-4 (Mar. 12, 2020) ("2010 Beneficiary Designation")); Def.'s Opp'n to Estate SMF at 27 ¶ 19 (citing Ex. 9 to Def's Mem. in Opp'n to Estate's MSJ, ECF No. 100-9 (May 18, 2020)).

The parties agree that the 2010 Beneficiary Designation does not specifically contain the words "SERP" or "Supplemental Executive Retirement Plan and Agreement," but disagree as to the scope of the form. *See* Pl.'s SMF ¶ 38; Estate SMF ¶ 20; Def.'s Opp'n to Estate SMF at 11 ¶ 20. The Estate alleges that with this form, Mr. Richard "designated Karen as his primary beneficiary under the [Defined Benefit] Pension Plan, in accordance with his obligations under the Prenuptial Agreement." Estate SMF ¶ 10. Mrs. Richard alleges that the 2010 Beneficiary Designation "is also applicable to the SERP and Defined Profit Sharing Plan." Def.'s Opp'n to Estate SMF at 6 ¶ 10.

The same day, Mrs. Richard executed another copy of the form, in which she designated

---

[7] Mrs. Richard "does not dispute the authenticity" of the copy of the 2010 Beneficiary Designation provided by the Estate, but "notes that the correct copy of the 2010 Beneficiary Designation is double sided." Def.'s Opp'n to Estate SMF at 6 ¶ 10.

Mr. Richard as her "primary beneficiary." *See* Ex. 15 to Pl.'s Mem.; Ex. 41 to Def.'s Opp'n to Pl.'s MSJ; Pl.'s SMF ¶ 40. Mrs. Richard alleges that the single-page form was not a separate document in her personnel file, but rather "was stapled to two documents that described Mrs. Richard's benefits under both the Defined Benefit Plan and the Defined Profit Sharing Plan so as to indicate that it was the beneficiary designation form applicable to both plans, i.e., a form applicable to any death benefits." Def.'s Opp'n to Pl.'s SMF at 14 ¶ 40.

Linda Sill served as the office manager at RMCO from 2003 or 2004 until her retirement in 2013. Estate SMF ¶ 21. Mrs. Sill stated that approximately every two to three years, RMCO would send out the employee beneficiary forms that would allow an employee to update or change a beneficiary for both the "pension plan" and the "profit sharing plan." Sill Dep. 36:2-12, attached as Ex. F to Estate SMF, ECF No. 86-6. Mrs. Sill stated that she had not heard of the term "Supplemental Retirement Plan and Agreement" before her 2018 deposition, nor was she aware of the existence of any such agreement by that name, though she had heard of the term "deferred compensation." *Id.* at 78:8-25. Mrs. Sill filled out Mr. Richard's name at the top of the 2010 Beneficiary Designation. Def.'s Opp'n to Estate SMF at 15 ¶ 25.

Matthew Sicilia is an employee of The Pension Service, Inc. ("TPS"), the administrator of the Defined Benefit Plan from at least 2000 until 2017. Estate SMF ¶ 27.

Mr. Sicilia stated that he thought that the 2010 Beneficiary Designation applied to the Defined Benefit Plan because it was located in a TPS folder titled "Richard Manufacturing Defined Benefit Plan." Sicilia Dep. 72:18-73:20, attached as Ex. G to Estate SMF, ECF No. 86-7. Mr. Sicilia stated that "TPS was never notified of the existence of the SERP and 'had no relation to it.'" Estate SMF ¶ 29 (citing Sicilia Dep. at 18). Mr. Sicilia stated that he "first learned of the SERP when he was contacted []by someone from RMCO in 2017 in connection with the

litigation brought by [Mrs. Richard] asking him to search the TPS files for any documentation relating to it." Estate SMF ¶ 30 (citing Sicilia Dep. at 18). Mr. Sicilia stated that he did not have any documents in his possession concerning the SERP. *Id.* ¶ 31.

Mr. Steponavich testified that the 2010 Beneficiary Designation applied to the Defined Benefit Pension Plan. Estate SMF at ¶ 34; Def.'s Opp'n to Estate SMF at 21 ¶ 34. In Mr. Steponavich's view, the deferred compensation provided under the SERP was "a separate agreement that was done for the sale of the business." Steponavich Dep. 128:16-20, attached as Ex. C to Estate Mem., ECF No. 85-3 (Mar. 12, 2020). Mr. Steponavich stated that Mr. Richard wanted all of the "proceeds for the business" to go to his children, and for Mrs. Richard to receive only the personal assets to which she was entitled under the Prenuptial Agreement. *Id.* at 56-58, 123.

Events Following Edward Richard's Death

On May 9, 2012, Edward Richard died. Pl.'s SMF ¶ 13.

On or about June 14, 2012, Mr. Richard's last will and testament was admitted into the Probate Division of the Circuit Court of Monroe County in Florida. Pl.'s SMF ¶ 20.

At the time of his death, Mr. Richard had with RMCO a Defined Benefit Pension Plan, a Profit Sharing Plan, and the SERP. *Id.* ¶ 14.  Mrs. Richard received funds from the Defined Benefit Pension Plan and the Profit Sharing Plan. *Id.* ¶ 15.

After Mr. Richard's death, RMCO began sending the monthly SERP payments to the Estate. *Id.* ¶ 18. The Estate did not disburse and, to date, has not, disbursed any SERP funds paid by the Company to the Estate from the Estate's account. *Id.* ¶ 19.

Mrs. Richard eventually realized that the monthly SERP payments were no longer being deposited into Mr. Richard's account. *Id.* ¶ 23. On June 4, 2012, she sent a fax to her friend and

financial advisor Wendy Coppola, which contained a copy of the 2010 Beneficiary Designation. *Id.* ¶ 24. Mrs. Richard also located a binder containing the SERP agreement in her home. *Id.* ¶ 25.

Mrs. Coppola referred Mrs. Richard to an attorney, Mario Zangari. Pl.'s SMF ¶ 27. On July 10, 2012, Mrs. Richard met with Mr. Zangari. *Id.* Mrs. Richard retained Mr. Zangari to represent her in connection with the SERP. Def.'s Opp'n to Estate SMF at 29 ¶ 39.

At some point in July 2012, Mr. Zangari asked Mrs. Richard whether she had a beneficiary designation form that applied to the SERP. *Id.* at 21 ¶ 35. At some point, during that same month, Mrs. Richard said that she did not have a designation form that applied to the SERP in her possession. *Id.* at 21 ¶ 36. Sometime in 2012, Mr. Steponavich told Mr. Zangari that RMCO had no designation form that applied to the SERP. *Id.* at 22 ¶ 37 (objecting to the truth of the matter asserted, but admitting that Mr. Steponavich made the communication to Mr. Zangari).

On September 21, 2012, Mrs. Richard filed a statement of claim in a Florida trial court, claiming that Mr. Richard breached the Prenuptial Agreement by failing to designate her as beneficiary of the SERP and that she was entitled to nearly $4 million in retirement benefits. *See* Def.'s Opp'n to Estate SMF at 30 ¶ 42 (citing *Richard v. Richard*, 193 So. 3d 964 (Fla. Dist. Ct. App. 2016)). The trial court entered summary judgment in favor of Mrs. Richard and declared a notice to creditors a nullity because it was published one day prior to rendition of the order appointing personal representatives, and denied the Estate and Ms. Chernecky's motions, as personal representatives of the Estate, to strike Mrs. Richard's creditor claim as untimely and declared Mrs. Richard's claim timely filed. *See Richard*, 193 So. 3d at 965.

On September 26, 2012, Mr. Zangari sent RMCO a letter asking for "a copy of Mr.

Richard's beneficiary designation for the [SERP agreement], or written confirmation that no such designation exists in the Company's records," and requested that RMCO forward the title to Mr. Richard's car "as is her right under Section 2(c)(iii) of the [SERP agreement]." Letter, attached as Ex. 9 to Pl.'s Mem.; Pl.'s SMF ¶ 30; Def.'s Opp'n to Pl.'s SMF at 9 ¶ 30 (disputing RMCO's characterization of the letter, not the letter itself).

On May 4, 2016, the Florida appellate court reversed the trial court, concluding that Ms. Richard's claim was not timely filed because a state relation back provision applied to the personal representatives' act of publishing the notice to creditors, and "[t]herefore, even though the personal representatives published the notice one day before the court entered its order appointing them as personal representatives, the order relate[d] back to th[e] prior act and render[ed] the act valid." *Richard*, 193 So. 3d at 965.

Later in 2016, Mrs. Richard filed a legal malpractice action against Mr. Zangari and his firm, which arose from the 2012 claim being found untimely by the Florida appellate court. Def.'s Opp'n to Pl.'s SMF at 9 ¶ 32 (citing *Richard v. Zangari, et al.*, No. X10-UWY-CV16-6036699-S (Conn. Super. Ct. 2016)).

On August 3, 2017, Mrs. Richard sued RMCO and Mr. Steponavich in Connecticut state court. Pl.'s SMF ¶ 34; Def.'s Opp'n to Pl.'s SMF at 10 ¶ 34 (citing *Richard v. Richard Manufacturing Co.,* No. X10-UWY-CV17-6036700-S (Conn. Super. Ct. 2017)). Mrs. Richard set forth claims of common-law fraud, statutory theft, conversion, and negligent misrepresentation against both RMCO and Mr. Steponavich, and breach of contract and breach of the covenant of good faith and fair dealing as to RMCO. *See* Compl., *Richard*, No. X10-UWY-CV17-6036700-S.

On November 3, 2017, Mrs. Richard sued Joel Richard, in both his individual capacity

and his capacity as representative of the Estate, RMCO, Mr. Steponavich, Mr. Zangari, Zangari

Cohn Cuthbertson, P.C., Zangari Cohn Cuthbertson Duhl & Grello, P.C., and Ms. Chernecky in

Connecticut state court. Pl's SMF ¶ 36 (citing *Richard v. Joel J. Richard, Personal*

*Representative of the Estate of Edward A. Richard et al.*, No. X10-UWY-CV17-6037200-S

(Conn. Super. Ct. 2017)); Def.'s Opp'n to Pl,'s SMF at 11 ¶ 36. Mrs. Richard sought a

declaratory judgment that she was owed SERP payments because of the 2010 Beneficiary

Designation and various forms of injunctive relief barring the Estate from otherwise distributing

SERP payments. *See* Compl. at 6, *Richard*, No. X10-UWY-CV17-6037200-S.

### B. Procedural History

On August 25, 2017, RMCO filed its interpleader Complaint against Joel Richard, in both

his individual capacity and capacity as executor of the Estate, Mrs. Richard, in both her

individual capacity and capacity as executor of the Estate, and Kimberly Chernecky, a daughter

of Mr. Richard. Compl. In its Complaint, RMCO requested:

> (a) [that] each Defendant be restrained from commencing or
> pursuing any further action against the Plaintiff and/or James
> Steponavich as an individual;
>
> (b) that an order be entered that no Defendant is entitled to any of
> the proceeds paid to the Estate pursuant to the SERP until such
> time as the Court determines the proper party or parties entitled
> to receive said funds;
>
> (c) that an order be entered that the Plaintiff be permitted to continue
> to pay the Estate pursuant to the SERP, with the Estate holding
> the funds in escrow until such time as the Court determines the
> proper party or parties entitled to receive said funds;
>
> (d) that an order be entered determining the rights to all held SERP
> proceeds as well as future payments;
>
> (e) that the Plaintiff and James Steponavich be discharged from any
> and all liability except with respect to which party or parties are
> entitled to the future SERP payments;

> (f) that the Plaintiff recovers its attorney's fees and costs of this action, including but not limited to financial recovery from the SERP payments; and
>
> (g) [] such further relief that the Court find[s] just and proper under the circumstances of this case.

*Id.* at 6.

On November 29, 2017, the Estate filed an Answer to the Complaint. Estate Answer. The Estate also filed a breach of contract counterclaim against RMCO arising from the discontinuation of SERP payments to the Estate. *Id.* at 6 ¶¶ 1-5.

On December 1, 2017, Mrs. Richard moved to dismiss the Complaint and stay the proceedings given the State Actions. Mot. to Dismiss, ECF No. 17 (Dec. 1, 2017); Mem. in Supp. of Mot. to Dismiss, ECF No. 18 (Dec. 1, 2017).

On December 21, 2017, both RMCO and Joel Richard objected to the motion.[8] Obj., ECF No. 24 (Dec. 21, 2017); Obj., ECF No. 25 (Dec. 21, 2017).

On July 30, 2018, the Court denied the motion to dismiss. Order, ECF No. 32 (July 30, 2018).

On August 31, 2018, RMCO moved for an interpleader deposit under 28 U.S.C. § 1335. Mot. for Interpleader Deposit, ECF No. 33 (Aug. 31, 2018). RMCO requested to deposit into the registry of the Court $249,999.96 in funds, the total amount of unpaid SERP payments from September 2017 through August 2018. *Id.* at 1. RMCO also sought leave to deposit future SERP payments, if any, into the Court registry. *Id.*

On March 6, 2019, Mrs. Richard filed an Answer to the Complaint. Def.'s Answer. In her Answer, Mrs. Richard asserted five counterclaims against RMCO: conversion, breach of

---

[8] That same day, RMCO filed a notice of dismissal to terminate Joel Richard, in his personal capacity, and Mrs. Chernecky, from the case. Notice of Dismissal, ECF No. 26 (Dec. 21, 2017).

contract, negligent misrepresentation, statutory theft, and common-law fraud. *Id.* at 6-11. She

also asserted one conversion crossclaim against the Estate. *Id.* at 11-12.

On June 26, 2019, the Court ordered the parties to submit, jointly if possible or

individually, modified proposed language for an interpleader deposit order. Order, ECF No. 45

(June 26, 2019).

On July 5, 2019, the parties jointly proposed an interpleader deposit order. Joint Proposed

Interpleader Deposit Order, ECF No. 50 (July 5, 2019).

On July 12, 2019, the Court granted the motion for interpleader deposit, with an initial

authorized deposit in the amount of $458,333.26, or payments due under the SERP from

September 2017 through June 2019, and permitted additional future deposits for monthly

payments. Order, ECF No. 51 (July 12, 2019).

On March 12, 2020, the Estate moved for summary judgment on both the interpleader

Complaint and Mrs. Richard's crossclaim. Estate MSJ.

On March 13, 2020, RMCO moved for dismissal and/or summary judgment. Pl.'s MSJ.

On May 18, 2020, Mrs. Richard opposed both the Estate's and RMCO's motions. Def.'s

Opp'n to Estate MSJ; Def.'s Opp'n to Pl.'s MSJ.

On May 22, 2020, Mrs. Richard moved to amend the counterclaims against RMCO set

forth in her Answer to add a claim under ERISA. Mot. to Amend.

On June 1, 2020, the Estate filed an Answer to Mrs. Richard's crossclaim. Answer, ECF

No. 110 (June 1, 2020).

On June 12, 2020, RMCO objected to Mrs. Richard's motion to amend. Obj., ECF No.

113 (June 12, 2020) ("Pl.'s Obj. to Mot. to Amend").

On June 22, 2020, RMCO replied to Mrs. Richard's opposition to its summary judgment

motion. ECF No. 115 (June 22, 2020) ("Pl.'s Reply").

That same day, the Estate replied to Mrs. Richard's opposition to the Estate's summary judgment motion. Estate Reply.

On June 26, 2020, Mrs. Richard replied to RMCO's objection to her motion to amend. Reply, ECF No. 117 (June 26, 2020) ("Def.'s Reply to Obj. to Mot. to Amend").

On August 26, 2020, Mrs. Richard moved for leave to file a sur-reply to the Estate's reply to her opposition to the Estate's summary judgment motion. Mot. for Leave to File Sur-Reply, ECF No. 120 (Aug. 26, 2020). On August 27, 2020, the Court granted the motion. Order, ECF No. 121 (Aug. 27, 2020). On September 4, 2020, Mrs. Richard filed her sur-reply. Karen Richard's Sur-Reply to the Estate's Reply re: Mot. for Summ. J., ECF No. 122 (Sept. 4, 2020) ("Def.'s Sur-Reply to Estate MSJ").

On September 9, 2020, Mrs. Richard moved for leave to file a sur-reply to RMCO's reply to her opposition to RMCO's summary judgment motion. Mot. for Leave to File Sur-Reply, ECF No. 124 (Sept. 9, 2020). On September 15, 2020, the Court granted the motion. Order, ECF No. 126 (Sept. 15, 2020). On September 17, 2020, Mrs. Richard filed her sur-reply. Karen Richard's Sur-Reply to the Estate's Reply re: Mot. for Summ. J., ECF No. 127 (Sept. 17, 2020) ("Def.'s Sur-Reply to Pl.'s MSJ").

On November 23, 2020, the Court held a hearing by video-conference as to the motions for summary judgment and Mrs. Richard's motion to amend. Min. Entry, ECF No. 131 (Nov. 24, 2020).

On November 25, 2020, Ms. Richard filed an additional exhibit to her memorandum in opposition to summary judgment. Response, ECF No. 132 (Nov. 25, 2020).

## II.    STANDARD OF REVIEW

### A.  Summary Judgment Motions

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Instead, a party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing

*Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

### B.  Motions to Dismiss

A complaint must have a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must have "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F. 3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F. 3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F. 3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F. 2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### C.  Motions to Amend

Federal Rule of Civil Procedure 15(a) provides that parties may either amend pleadings once as a matter of course within twenty-one days after serving the pleading or, after twenty-one days, move for leave to amend. Fed. R. Civ. P. 15(a). The "court should freely give leave when justice so requires." *Id.* If the underlying facts or circumstances relied upon by a party may be a proper subject of relief, that party should be given the opportunity to test its claims on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of any apparent or declared reason for denying leave, the leave sought should be "freely given." *Id.*

While the decision to grant leave to amend is within the Court's discretion, it must give some "justifying reason" if it denies leave. *Id.* at 182. Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.*; *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)") (internal citations omitted); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

Although Rule 15 is applied liberally, "[Federal] Rule [of Civil Procedure] 16(b) may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). "Under Rule 16(b), a party may obtain a modification of the scheduling order," to belatedly amend the pleading, "only upon a showing of good cause." *Id.* (internal quotation marks omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." (citations omitted)).

## I.    DISCUSSION

The Court will address the summary judgment motions, RMCO's motion to dismiss, the parties' counter- and cross-claims, and Mrs. Richard's motion for leave to amend in turn.

### A.   Summary Judgment as to the Interpleader Complaint

The resolution of the pending summary judgment motions requires addressing two fundamental issues: (1) whether the plain language of the 2010 Beneficiary Designation or the SERP agreement makes clear that the 2010 Beneficiary Designation applied to the SERP agreement, and if not, whether other evidence in the record is significantly probative as to whether the 2010 Beneficiary Designation applied to the SERP; and (2) whether Mrs. Richard, in any event, was required to follow administrative claims procedures to secure any claim to the SERP.

### 1.   The Applicability of the 2010 Beneficiary Designation to the SERP

The SERP agreement provides that the plan is to "be considered entirely unfunded both for tax purposes and for purposes of Title I of ERISA." SERP at 5; *see also id.* at 1 ("The [P]lan . . . is intended to be an unfunded and unsecured plan maintained by Company primarily for the purpose of providing supplemental deferred compensation for a select and key member of Company's executive management employees."). A plan of this type is often called a "top hat" plan, "meaning primarily that it establishes the terms on which the company will make certain deferred compensation payments . . . to highly-compensated executives." *American Intern. Grp, Inc. Amended and Restated Exec. Severance Plan v. Guterman*, 496 F. App'x 149, 150–51 (2d Cir. 2012) (citing *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286-87 (2d Cir. 2000)). "Such plans are exempt from many of ERISA's provisions, and administrators of such plans are not subject to ERISA's fiduciary responsibility obligations." *Id.* at 151. These plans are

also exempt from the "spousal protection provision[s]" required by ERISA. *Dickerson v. United Way*, 351 F. App'x 506, 507 (2d Cir. 2009). Like other ERISA-qualified plans, however, they are subject to ERISA's "disclosure requirements, to civil enforcement, and to the duty to have a claims procedure." *Eastman Kodak Co.*, 452 F.3d at 217.

ERISA-regulated plans are construed in accordance with federal common law. *See Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 2001) ("Interpretation of the terms of an ERISA pension plan is governed by the 'federal common law of rights and obligations under ERISA-regulated plans.'" (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989))). "ERISA federal common law is largely informed by state law principles," and courts "apply familiar rules of contract interpretation in reading an ERISA plan." *Lifson v. INA Life Ins. Co. of N. Y.*, 333 F.3d 349, 352-53 (2d Cir. 2003) (per curiam) (internal citations omitted).

In applying these principles, courts "interpret and enforce unambiguous language in an ERISA plan according to its plain meaning." *Aramony*, 254 F.3d at 412. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (internal quotation marks omitted). "In making a determination of ambiguity, reference may not be had to matters external to the entire integrated agreement." *Id.* (internal quotation marks omitted).

 "In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *Cable Scis. Corp. v. Rochdale Vill., Inc.*, 920 F.2d 147, 151 (2d Cir. 1990) (quoting *William C. Atwater Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (1927)); *see also Nat'l*

*Union Fire Ins. v. Turtur*, 892 F.2d 199, 205 (2d Cir. 1989) ("Questions of intent, we note, are usually inappropriate for disposition on summary judgment."). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). "Ambiguity resides in a writing when – after it is viewed objectively – more than one meaning may reasonably be ascribed to the language used." *Id.* A court may only grant summary judgment "where the language is unambiguous." *Id.*

Though both the RMCO and the Estate move for summary judgment, they seek the same result: that the Court find the proper recipient of the SERP monthly payments to be the Estate. *See* Pl.'s Mem. at 28; Estate Mem. at 1-2.

RMCO argues that Mrs. Richard "[w]as [n]ot [n]amed as [b]eneficiary" to the SERP, Pl.'s Mem. at 3, because Mr. Richard "chose to not name [Mrs.] Richard beneficiary under the clear terms of the SERP," *id.* at 4; "[t]he clear language within the SERP names [the] Estate the beneficiary, [and] there was no SERP specific designation form created," *id.* at 5; and "the testimony of Joel Richard, James Steponavich and Karen Richard was that Edward Richard's intention was that when he sold the company, the proceeds from the sale were going to go to his children/to his Estate," *id.*

The Estate argues that as to the interpleader Complaint, "barring a beneficiary designation form for the SERP that is filed with RMCO, payments under the SERP [will] go to the Estate upon Decedent's death." Estate Mem. at 2. As to Mrs. Richard's crossclaim, the Estate argues that "[s]ummary judgment should be granted in the Estate's favor . . . because there is no genuine issue of fact that the 2010 Beneficiary Designation, upon which [Mrs. Richard] bases her claim for entitlement to the payments, does not apply to the SERP." Estate Mem. at 6-7. In

the Estate's view, "there is no genuine issue of material fact that [Mrs. Richard] is not entitled to the SERP payments based on the designation form and that the Estate is entitled to the SERP payments." *Id.* at 2.

Specifically, the Estate sets forth three bases for its claim that the 2010 Beneficiary Designation does not apply to the SERP: that (1) the SERP was part of Mr. Richard's sale of RMCO, *id.* at 7-8; (2) the 2010 Beneficiary Designation applied to the Defined Benefit Pension Plan and not the SERP, *id.* at 8-12; and (3) the evidence, taken together, establishes that the 2010 Beneficiary Designation does not apply to the SERP, *id.* at 12-13.

In response to the Estate, Mrs. Richard argues that "the 2010 Beneficiary Designation actually serves as a universal beneficiary designation form that applies to any death benefits, i.e., it applies to all three retirement plans: Defined Benefit [Pension] Plan, Defined Profit Sharing Plan, and the SERP." Def.'s Opp'n to Estate MSJ at 10.[9] Mrs. Richard sets forth two bases for this claim: that (1) the plain language of the 2010 Beneficiary Designation and the forms previously used by RMCO establish the 2010 Beneficiary Designation as a universal beneficiary designation form applicable to any death benefits that RMCO owes upon Mr. Richard's death, including the SERP, *id* at 11-14; and (2) evidence outside the plain language, such the Prenuptial Agreement and conversations allegedly had between Mr. and Mrs. Richard, as well as RMCO's alleged treatment of the 2010 Beneficiary Designation as a "universal form" applicable to multiple RMCO plans, show that Mr. Richard executed the 2010 Beneficiary Designation with the intent for it to apply to the SERP, *id.* at 14-19.

Mrs. Richard also argues that the Estate's arguments as to plain language are unavailing

---

[9] As Mrs. Richard's oppositions to the Estate and RMCO motions for summary judgment are substantively similar, the Court applies these arguments to both motions, but notes where Mrs. Richard's arguments are applicable to only one party's contentions.

because the 2010 Beneficiary Designation does not mention any specific plan in the title of the
document or in the text, *id.* at 20, and the mere inclusion of a spousal and consent waiver does
not mean that the form applied only to the Defined Benefit Pension Plan, *id.* at 21-23. Mrs.
Richard argues further that no witness testified based on personal knowledge that the 2010
Beneficiary Designation applied only to the Defined Benefit Pension Plan, *id.* at 24-31, and the
fact that other RMCO employees also executed versions of the 2010 Beneficiary Designation
does not designate it is not applicable to the SERP, *id.* at 31-32.

Finally, Mrs. Richard argues that the Estate's reliance on Mr. Steponavich's testimony
that the SERP was part of the proceeds from the sale of RMCO is unavailing because it
improperly relies on inadmissible hearsay, and testimony concerning conversations with Mr.
Richard regarding the purchase price of RMCO or that Mr. Richard conditioned the sale of
RMCO on the execution of the SERP is barred by the parol evidence rule. *Id.* at 32-37.
Accordingly, Mrs. Richard argues that "a genuine dispute of material fact exists as to whether
the 2010 Beneficiary Designation . . . is applicable to any benefits payable upon the death of
[Mr.] Richard, which includes the SERP . . . ." *Id.* at 37.

With respect to RMCO's motion for summary judgment, Mrs. Richard primarily sets
forth substantively similar arguments to those raised in her opposition to the Estate's motion, all
in support of an entitlement to the SERP proceeds as a beneficiary.

The Court disagrees.

The threshold issue is whether the 2010 Beneficiary Designation is the writing necessary
to designate a beneficiary to the SERP. *See* Estate Mem. at 8-13; Pl.'s Mem. at 1 (arguing that
"all of [Mrs.] Richard's claims stem from her seeking the monthly payments paid out under the
SERP."). Thus, the Court begins its analysis there.

The SERP agreement provides, in relevant part, that "all amounts payable by Company [under the SERP] shall be payable in accordance with the terms thereof to such beneficiary or beneficiaries as Executive may have designated in writing and filed with Company or, in the absence of such designation, to Executive's estate." SERP at 2 ¶ 2(c). On this record, there is no designation in writing specifically related to the SERP. There is, however, the 2010 Beneficiary Designation, a form executed after the SERP, which Mrs. Richard argues is a "universal designation form" applicable to the SERP. *See* Def.'s Opp'n at 1. The 2010 Beneficiary Designation, however, is titled "Richard Manufacturing Company, Inc. Defined Beneficiary Designation." 2010 Beneficiary Designation. There is no reference whatsoever to the SERP, the Supplemental Executive Retirement Plan, or deferred compensation in the text of the document. *Id*.

While the absence of the express words "SERP," "Supplemental Executive Retirement Plan," or "deferred compensation" on the 2010 Beneficiary Designation is not dispositive, this Court is required to give the document's "language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *Cable Scis. Corp.*, 920 F.2d at 151 (internal quotation marks and citation omitted). The SERP gave Mr. Richard the option to designate a beneficiary, if he chose to do so. SERP at 2 ¶ 2(c) (providing that "all amounts payable by Company [under the SERP] shall be payable in accordance with the terms thereof to such beneficiary or beneficiary as Executive may have designated in writing and filed with Company or, in the absence of such designation, to Executive's estate."). The 2010 Beneficiary Designation, however, required Mr. Richard to choose a beneficiary. *See* 2010 Beneficiary Designation (mandating that a beneficiary designation "must" be completed by "all participants").

Nothing in the text of the SERP agreement required Mr. Richard to have Mrs. Richard's consent, if he chose not to designate her as a beneficiary, and as a "top hat" plan, the SERP did not have to include spousal consent language. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 108 (2d Cir. 2008) ("'Top hat plans . . . are exempt from many provisions of ERISA, including the participation and vesting, funding, and fiduciary responsibility requirements.") (citing 29 U.S.C. §§ 1021, 1132, 1133) (internal quotation marks omitted)); *Dickerson*, 351 F. App'x at 507 (benefits under ERISA-covered plans "must be paid in the form of a qualified joint and survivor annuity unless the participant's spouse consents to the election of another form of benefits," but "this spousal protection provision does not apply to . . . a Supplemental Executive Retirement Plan . . . or 'top hat' plan."); *E & J Gallo Winery v. Rogers*, 593 F. App'x 735, 736 (9th Cir. 2015) ("[T]he [plan at issue] is a non-qualified, top hat plan, exempted under ERISA from spousal consent requirements.").[10] But the express language of the 2010 Beneficiary Designation required Mr. Richard either to designate any spouse as the primary beneficiary or to have that spouse "waive his/her rights as primary beneficiary to any death benefits payable upon the death of the participant." 2010 Beneficiary Designation.[11]

In short, applying the 2010 Beneficiary Designation to the SERP would require ignoring obvious inconsistencies to the intended scope of each document, as indicated by its express

---

[10] Notably, as a matter of law, RMCO did have to include the spousal consent provision in the 2010 Beneficiary Designation for its Defined Benefit Plan participants. *See* Defined Benefit Pension Plan at 23 ¶ 4 (explaining it is a qualified plan under the Internal Revenue Code); *Hurwitz v. Sher*, 982 F.2d 778, 782 (2d Cir. 1992) (finding that "antenuptial agreements lacking ERISA waiver requirements do not constitute effective waivers under ERISA"); *Dickerson*, 351 F. App'x at 507 (explaining that "[b]enefits under an ERISA-covered plan must be paid in the form of a qualified joint and survivor annuity unless the participant's spouse consents to the election of another form of benefits").

[11] Significantly, what Mrs. Richard deems to be the sweeping and "universal" scope of the 2010 Beneficiary Designation – its reference to "any death benefits" – is language contained within the spousal consent provision of the form. *See* 2010 Beneficiary Designation (requiring the signer to either designate any spouse as the primary beneficiary or have that spouse "waive his/her rights as primary beneficiary to any death benefits payable upon the death of the participant").

language, and rendering specific provisions in each "superfluous or meaningless," in conflict with basic rules of contract interpretation. *See Estate of Kenyon v. L + M Healthcare Health Reimbursement Account*, 404 F.Supp.3d 627, 632 (D. Conn. 2019) ("One such rule is that the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous or meaningless.") (internal quotation marks and citations omitted); *United Illuminating Co. v. Wisvest-Connecticut, LLC*, 259 Conn. 665, 674 (2002) (same); *see also R.T. Vanderbilt Co. v. Continental Cas. Co.*, 273 Conn. 448, 468 (2005) ("[I]nsurance policies should not be interpreted in a manner that renders any part of the policy superfluous . . ."); *Jepsen v. Camassar*, 181 Conn. App. 492, 519 (2018) ("[W]e are mindful that every word and phrase of a deed is presumed to have meaning, and must be construed in a manner that does not render it superfluous.").

This Court should "not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 269 Conn. 599, 610-11 (2004). Indeed, "any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Id.* at 611. The unambiguous language of the 2010 Beneficiary Designation required Mr. Richard to do what he was not required to do under the unambiguous language of the SERP. As a result, the plain language of the 2010 Beneficiary Designation cannot be construed as the writing required under the SERP.

Accordingly, under the plain language of the SERP, Mrs. Richard lacks the designation in writing necessary to be the beneficiary of the SERP funds.

Even if the language of the 2010 Beneficiary Designation were construed as ambiguous as to its applicability as the designated writing for the SERP, any claim of entitlement by Mrs.

Richard to be designated as Mr. Richard's beneficiary of the SERP funds still would fail. There is no record evidence that either RMCO or Mr. Richard – much less both of them – intended for the 2010 Beneficiary Designation to serve as the designation in writing for SERP benefits. *See, e.g.*, *Gold v. Rowland*, 325 Conn. 146, 192 (2017) ("The cardinal rule of contract interpretation is to ascertain the intention of the parties from their expression of it."); *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("'In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction.'" (quoting *Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734 (2005))); *O'Connor v. City of Waterbury*, 286 Conn. 732, 743 (2008) ("A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself . . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact.").

While both RMCO and the Estate argue that the depositions of Mrs. Sill, Mr. Sicilia, and Mr. Steponavich, taken together, make clear that there is no genuine issue of material fact that the 2010 Beneficiary Designation did not apply to the SERP, *see* Estate Mem. at 8-10 ("[E]very witness with knowledge of the 2010 Beneficiary Designation supported the fact that it applied to the [Defined Benefit] Pension Plan and that it did not apply to the SERP."); Pl.'s Mem. at 21-23 (discussing the testimony of Mrs. Sill and Mr. Steponavich and arguing that "[b]ased upon the plain terms of the form itself, along with all the evidence in this matter, the [2010 Beneficiary Designation] simply does not apply to the SERP"), the salient issue is whether RMCO and Mr. Richard intended for the 2010 Beneficiary Designation to apply to the SERP. And on this threshold issue, there is no record evidence.

Mr. Steponavich's testimony – which, in fact, is testimony about what Mr. Richard told him – even if admissible, also does not show that Mr. Richard intended to use the 2010 Beneficiary Designation to designate Mrs. Richard as the beneficiary of his SERP benefits. [12] Even if true – that Mr. Richard desired the proceeds from the sale to flow to his children, and would not have completed the sale of RMCO without the SERP – the Estate and RMCO have not shown that this would have precluded the 2010 Beneficiary Designation from being used to designate Ms. Richard as the SERP's intended beneficiary.

The Court therefore need not, and does not, consider whether the parol evidence rule bars consideration of the closing documents, correspondence between counsel as to the stock purchase agreement, promissory note, and lease, as even if this evidence conclusively showed that the SERP was contemplated as part of the RMCO sale, the Estate and RMCO have not shown that this definitively resolves the disputed question of material fact – namely, whether Mr. Richard intended to name Mrs. Richard as the beneficiary of the SERP funds when he signed the 2010 Beneficiary Designation.

---

[12] Conn. Gen. Stat. § 52-172 provides in pertinent part that:

> In actions by or against the representatives of deceased persons, and by or against the beneficiaries of any life or accident insurance policy insuring a person who is deceased at the time of the trial, the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence.

Conn. Gen. Stat. § 52-172. "The Dead Man's Statute is a rule of substantive law and not purely an evidentiary rule." *Larsen v. Sunrise Senior Living Mgmt.*, No. 7:08-cv-455 (WWE), 2010 WL 4340468, at *1 (D. Conn. Oct. 20, 2010). Accordingly, Connecticut courts have allowed the Dead Man's Statute to apply even where, like here, the witness testifying as to the decedent's statements is not a representative of the decedent. *See Dinan v. Marchand*, 279 Conn. 558, 577 (2006) (recognizing "that a third party who was not an heir or other representative of the decedent's estate and sought to contest the decedent's will could invoke the statute to testify as to the decedent's statements"). These statements, so long as they comply with the requirements under § 52-172, are admissible if they are "relevant to the matter in issue." Conn. Gen. Stat. § 52-172. The relevant statements from Mr. Steponavich's deposition testimony are (1) Mr. Steponavich's assertion that Mr. Richard indicated to him that he would not sell RMCO unless Mr. Steponavich agreed to the SERP, Steponavich Dep. at 129:17-21, and (2) Mr. Steponavich's statement that Mr. Richard told him that "all the proceeds for the business should go to his kids," *id.*. at 125:19-23.

Likewise, Mrs. Richard's testimony about what Mr. Richard intended to do with the SERP proceeds, *see, e.g.*, Richard Dep., ECF No. 102-11, at 104:18-20 (May 18, 2020) ("Q: What did he say to you about the SERP? A: Well, he said that that monthly payment that comes, he said that would also be mine."), or that he should have designated her the SERP beneficiary under the Prenuptial Agreement, *see* Def.'s Opp'n to Pl.'s MSJ at 14-15 ("Under the terms [of the Prenuptial Agreement], [Mr.] Richard was contractually obligated to name Mrs. Richard as the beneficiary of the SERP."), also falls short of providing evidence on the threshold issue: whether Mr. Richard intended to designate her as his primary beneficiary for the SERP by signing the 2010 Beneficiary Designation.[13] *See Harbour Pointe LLC*, 300 Conn. at 264-265 ("[E]ven if the declaration is ambiguous, which it is not, the trial court is only bound to consider relevant extrinsic evidence."). With this evidence, a reasonable jury still could not conclude that Mr. Richard intended to designate Mrs. Richard as his beneficiary of the SERP when he signed the 2010 Beneficiary Designation without speculating. *Cf.* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citing Fed. R. Evid. 602 in stating that where a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 87 (2d Cir. 2005) ("The witness's testimony must be based on events perceived by the witness." (quoting 3 *Weinstein's Fed. Evid.* § 602.02)); *United States v. Ohanmu*, 607 F. App'x 108, 109 (2d Cir. 2015) (summary order) (finding that testimony from the defendant's wife pertaining to his transportation to the border was properly excluded where it did not express the defendant's "intent after escorting his family to the border"); *Rivera v.*

---

[13] As noted above, any claim regarding Mrs. Richard's entitlement to the SERP funds as a result of the Prenuptial Agreement was adjudicated in a Florida state court.

*Brennan*, No. 3:16-cv-330 (VAB), 2018 WL 658832, at *11 (D. Conn. Jan. 31, 2018) ("Ms.

Rivera has offered nothing more than speculative testimony that, no matter its ultimate form,

would be inadmissible in court." (citing *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013)

("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for

summary judgment," and a "district court deciding a summary judgment motion has broad

discretion in choosing whether to admit evidence.") (internal citation omitted))).

   In other words, even if there is an ambiguity as to the plain language of the 2010

Beneficiary Designation, there is no admissible evidence that both RMCO and Mr. Richard

intended to use the 2010 Beneficiary Designation to designate Mrs. Richard as the beneficiary of

the SERP funds. In the absence of such evidence, regardless of whether the language of the form

is ambiguous, there is no evidence of an objective agreement between RMCO and Mr. Richard

as to whether this form was the designated writing called for by the SERP. *See Conn. Light and

Power Co. v. Proctor*, 324 Conn. 245, 259 (2016) ("A contract implied in fact, like an express

contract, depends on actual agreement.") (internal quotation marks and citations omitted); *see

also Hoffman v. Fidelity & Cas. Co. of N. Y.*, 125 Conn. 440, 443-44 (1939) (if parties' "minds

have never met, no contract has been entered into by them"); *cf. Montanez v. D & D Auto, LLC*,

No. 3:15-cv-397 (VAB), 2016 WL 1254199, at *15 (D. Conn. Mar. 29, 2016) ("Under

Connecticut law, settlement agreements are generally not enforceable where there has been no

final meeting of the minds or where terms of the agreement remain disputed.").

   "[C]onsistent with the objective theory of contracts, . . . the making of a contract does not

depend upon the secret intention of a party but upon the intention manifested by his words or

acts, and on these the other party has a right to proceed." *Proctor*, 324 Conn. at 267–68. Here,

there is no admissible evidence that the parties assented to the use of the 2010 Beneficiary

Designation as a permissible vehicle to designate Mrs. Richard the beneficiary of the SERP, or that Mr. Richard so intended when he signed the 2010 Beneficiary Designation. As a result, Mrs. Richard's claimed entitlement to the SERP funds as a primary beneficiary must fail.

Accordingly, the summary judgment motions of RMCO and the Estate as to the Interpleader Complaint will be granted.

### 2. The Exhaustion of Administrative Remedies Under ERISA

"[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). "[P]lan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 181 (2d Cir. 2013). Where "plan terms themselves are ambiguous as to whether [parties are] required to pursue administrative remedies," and the parties "reasonably interpret the plan terms not to require [them] to file a benefits claim," parties are not required to have exhausted administrative remedies. *Id.*; *see id.* ("It is apparent that Kirkendall thought that she had pursued the avenues available to her and reasonably concluded that the only means of vindicating her claim was through a lawsuit.").

RMCO argues that, in addition to Mrs. Richard having failed to demonstrate that the 2010 Beneficiary Designation constitutes the designation in writing required under the SERP, Mrs. Richard failed to exhaust her administrative remedies under ERISA, *see* Pl.'s Mem. at 6–15; and also failed to follow administrative claim procedures within the required time frame, *see id.* at 15-17.

In response, Mrs. Richard argues that she was not required to exhaust any administrative

remedies or follow a claims procedure, including any time requirements, because she was the designated beneficiary in the 2010 Beneficiary Designation, which she argues applies to the SERP. Def.'s Opp'n to Pl.'s MSJ at 32-34. Mrs. Richard also argues that "Executive" is defined in the SERP as only "Edward Richard," and therefore, that "[t]he provisions outlining the claims procedure, exhaustion of administrative remedies, and time requirements under section 9(g) [of the SERP] are clear and unambiguous: they only refer to 'Executive,' and 'Executive' is only defined as Edward Richard." *Id.* at 33.

In reply, RMCO argues that because the SERP agreement elsewhere states that "[t]his Agreement shall be binding upon and shall inure to the benefit of Company, Executive, and their respective heirs, successors, and assigns," SERP at 8 ¶ 12, Mrs. Richard was obligated to, and failed to, make a claim as required of the "Executive." *See* Pl.'s Mem. at 6-8; Pl.'s Reply at 7.

The Court agrees.

A contract "must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015) (quoting *Parisi v. Parisi*, 315 Conn. 370, 383-84 (2015) (omission in original)). Where an agreement "provides a clear and unambiguous definition," *Pesino v. Atl. Bank of N. Y.*, 244 Conn. 85, 93 (1998), courts will not "import into the agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms," *id.* (quoting *Collins v. Sears, Roebuck & Co.*, 164 Conn. 369, 374 (1973)). Indeed, a trial court cannot, "[a]fter careful review of the text of [a] definition . . . improperly engraft[] additional terms into the construction of the term." *Id.*

The SERP agreement provides a procedure for filing claims for payments under the Plan, stating in relevant part that "if Executive believes he is entitled to payment under the Plan, he

may submit a claim for payment in writing to the Company, describing the nature of benefits

payable thereunder." SERP at 7 ¶ 9(g)(i).

The SERP also provides that:

> [n]o legal action to recover Plan benefits or to enforce or clarify rights under the Plan under Section 502 or 510 of ERISA or under any other provision of law, whether or not statutory, may be brought by Executive on any matter pertaining to the Plan unless the legal action is commenced in the proper forum before the earlier of: (A) thirty (30) months after Executive knew or reasonably should have known of the principal facts upon which the claim is based; or (B) six (6) months after Executive has exhausted the claim and review procedure.

SERP at 8 ¶ 9(g)(iii).

The SERP further provides that:

> [i]n no event may Executive commence legal action (including any action to enforce or clarify rights under the Plan under Section 502 or Section 510 of ERISA) for benefits Executive believes are due until Executive has exhausted the remedies and procedures afforded herein.

*Id.* at 8 ¶ 9(g)(ii).

Finally, paragraph 12 of the SERP provides that the "Agreement shall be binding upon

and shall inure to the benefit of Company, Executive and their respective heirs, successors and

assigns." *Id.* ¶ 12.

The first page of the SERP defines "Edward Richard" as the "Executive." SERP at 1. The

first series of recitals uses "Executive" to refer specifically to Mr. Richard, providing

information that would apply to Mr. Richard alone. *See, e.g., id.* ("WHEREAS, Executive served

as President of Company and a member of Company's Board of Directors"). Section 2 of the

SERP discusses "Retirement Benefits" and notes that the benefits are being provided "[i]n

consideration for Executive's past services to Company, including Executive's long tenure as

President of Company," *id.* at 1 ¶ 2. And Section 2(c), the subsection most relevant to this

dispute, describes what happens "[i]n the event of Executive's death prior to the expiration of the

Compensation Period," and refers to "Executive's spouse." *Id.* at 2 ¶ 2(c). Indeed, the SERP

agreement refers to the "Executive" as an individual person, namely Mr. Richard, in many other

places throughout its text. *See, e.g.*, *id.* at 2 ¶ 3 ("Executive shall remove his personal belongings

from Company offices . . ."); *id.* at 6 ¶ 9(c) ("Neither Executive nor any other person shall have

any interests in any particular assets . . ."). And Mr. Richard signed the SERP agreement as

"Executive." *Id.* at 10.

But paragraph 12 of the SERP also expressly provides for the agreement to be binding on

not just Mr. Richard, but also "shall be binding upon and shall inure to the benefit of Company,

Executive and their respective heirs, successors and assigns." *Id.* at 8 ¶ 12. As a result, to

determine whether the administrative exhaustion requirements of the SERP apply to Mrs.

Richard, the issue is whether she is a "heir[ ], successor[ ], or assign" of Mr. Richard within the

meaning of the SERP.  Because this Court must view this contract "in its entirety, with each

provision read in light of the other provisions . . . and every provision must be given effect if it is

possible to do so," *Nation-Bailey*, 316 Conn. at 192 (internal quotation marks and citations

omitted), the answer is yes. *Cf. In re Lehman Brothers*, No. 17-cv-6246 (AT), 2018 WL

10454936, at *5 (S.D.N.Y. Sept. 26, 2018) (recognizing that "if the agreements do not contain

any special meaning of "successor," [the party] is at least a successor [to the other party] under

the principles of general corporate law . . . . [and permitting that party] to enforce the

agreements.") (citation omitted).

The Court construes the plain language of this provision as it is written: that it "shall be

binding upon and shall inure to the benefit of Company, Executive and their respective heirs,

successors and assigns." SERP at 8 ¶ 12. Just as the express language of the SERP provides specific guidance to as to the process and time limits of any challenge, the express language of the SERP also empowers Mrs. Richard or any other "heir, successor, or assign" of Mr. Richard to enforce any rights provided under the SERP not only against RMCO but any of its "heirs, successors, and assigns." *See In re Lehman Brothers*, 2018 WL 10454936 at *5 (recognizing a party's entitlement "to enforce the agreements").

Under Connecticut law, a surviving spouse is an "heir" because a surviving spouse may inherit from a decedent who dies intestate. *See Heath v. Heath*, 150 Conn. App. 199, 204 n.6 (recognizing that under Connecticut's statutes of distribution, the terms "heir-at-law" or "legal heir" "would include a surviving spouse and lineal descendants") (citing *Daniels v. Daniels*, 115 Conn. 239, 240-41 (1932)); Conn. Gen. Stat. § 45a-437(a)(1) (providing that if a decedent dies intestate, a surviving spouse is entitled to "the entire intestate estate absolutely" if there is no surviving issue or parent of the decedent, and smaller portions of the estate if there are surviving issues or parents); *see also Daniels*, 115 Conn. at 240-41 (1932) ("The words 'legal heirs' . . . must be taken to mean those who would have been entitled to inherit from [the decedent] under our statutes of distribution, had he died intestate."); *Hartford-Connecticut Tr. Co. v. Lawrence*, 106 Conn. 178 (1927) ("The surviving spouse thus inherits by descent the real estate of the deceased, and is, since 1877, in fact an 'heir,' and within the primary, as well as the popular, meaning of the word 'heir.'" (internal quotation marks omitted)).

As a result, because there is no genuine issue of fact as to whether Mrs. Richard exhausted her administrative remedies or timely filed a claim regarding any rights under the SERP – she clearly did not – even if her claim to be designated as the beneficiary for Mr. Richard's SERP benefits otherwise was viable, this claim would have to be dismissed.

Accordingly, and for the reasons stated above, RMCO's motion for summary judgment as to the interpleader Complaint will be granted, and the Estate's motion for summary judgment as to both the Complaint and Mrs. Richard's crossclaim will be granted.

### B. Mrs. Richard's and the Estate's Counterclaims Against RMCO

In addition to addressing the pending summary judgment motions, the Court also must decide whether any of the counterclaims brought by Mrs. Richard and the Estate survive as a matter of law.

Mrs. Richard sets forth five counterclaims against RMCO: (1) conversion, *see* Def.'s Answer at 6-8; (2) breach of contract, as a third-party beneficiary, *see id.* at 8-9; (3) negligent misrepresentation, *see id.* at 9-10; (4) statutory theft, *see id.* at 10; and (5) common-law fraud, *see id.* at 10-11.

The Estate sets forth a breach of contract claim against RMCO. *See* Estate Answer at 6.

RMCO argues that all of Mrs. Richard's counterclaims are preempted by ERISA. *See* Pl.'s Mem. at 17-19. RMCO also argues that each of Mrs. Richard's counterclaims is "[n]ot [s]upported by [a]ny [e]vidence." *Id.* at 23-27.

RMCO argues that Estate's breach of contract claim is not viable on the ground that RMCO's "failure to choose among adverse claimants cannot itself be a breach of legal duty." Pl.'s Mem. at 27-28.

RMCO recites both the standard for summary judgment under Federal Rule of Civil Procedure 56(a) and for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in the "Legal Standard" section of its motion. *See* Pl.'s Mem. at 2-3. RMCO's only reference to which standard applies to Mrs. Richard's counterclaims is in its preliminary statement, where RMCO states: "Since her claims fail as a matter of law for the reasons set forth below, her tort

and contract claims, which are dependent upon the entitlement to the SERP funds, must also fail." *Id.* at 1. RMCO does not make clear whether it is moving to dismiss, or moving for summary judgment on, the Estate's counterclaim.

"If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In deciding whether to convert a motion to dismiss into a motion for summary judgment, "the essential inquiry is whether the [movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Antonucci v. Small Bus. Admin.*, No. 3:17-cv-01139 (MPS), 2018 WL 4697282, at *1 n.1 (D. Conn. Sept. 30, 2018) (quoting *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prod. Corp.*, 850 F.2d 904, 911 (2d Cir. 1988) (internal quotation marks and alterations omitted)).

With respect to Mrs. Richard's counterclaims, RMCO sets forth arguments that raise both questions of law (ERISA preemption), *see Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 98 (2d Cir. 1999), and those of fact (whether her claims are supported by evidence in the record), *see* Pl.'s Mem. at 23-27. And while RMCO on multiple occasions goes beyond the four corners of Mrs. Richard's Answer, it does so only with respect to its latter contention. *See, e.g.*, *id.* at 23 ("There has been no evidence offered in support of [Mrs.] Richard's counterclaims that there was malicious or even negligent action on the part of RMCO or James Steponavich."). With respect to the Estate's counterclaims, RMCO sets forth arguments that raise only questions of law: whether RMCO was entitled to bring an interpleader action. *Id.* at 27-28.

Because the Court chooses to resolve Mrs. Richard's counterclaims as a matter of law,

and necessarily resolves the Estate's counterclaims as a matter of law, the Court construes

RMCO's motion as a motion to dismiss and turns to each counterclaim in turn.

### 1. Mrs. Richard's Counterclaims

Section 514(a) of ERISA  provides in relevant part that ERISA "supersede[s] any and all

State laws insofar as they may now or hereafter relate to any employee benefit plan described in

section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144.

The Supreme Court has held that "a suit by a beneficiary to recover benefits from a covered plan

. . . falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of

action for resolution of such disputes." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987)

(citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)); *see also Krishna v. Colgate

Palmolive Co.*, 7 F.3d 11, 15 (2d Cir. 1993) ("Because the designation of beneficiaries to this life

insurance policy 'relates to' the ERISA plan, the preemption provision applies."). "ERISA

creates a comprehensive civil enforcement scheme that completely preempts any state-law cause

of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Montefiore Med. Ctr.

v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (quoting *Aetna Health Inc. v. Davila*,

542 U.S. 200, 209 (2004)).

In *Davila*, the Supreme Court established a two-part test to determine whether a claim

falls within the scope of § 502(a)(1)(B). *Davila*, 542 U.S. at 210. Under *Davila*, claims are

completely preempted by ERISA if they are brought by "an individual [who] at some point in

time, could have brought his claim under ERISA § 502(a)(1)(B)," and under circumstances in

which "there is no other independent duty that is implicated by a defendant's actions." *Id.* "A

state-law cause of action is preempted only if both prongs of the test are satisfied." *Montefiore

Med. Ctr.*, 642 F.3d at 328. "The Second Circuit divides the first prong . . . into two subparts: (a)

'whether the plaintiff is the type of party that can bring a claim [under] § 502(a)(1)(B),' and (b)

'whether the actual claim that plaintiff asserts can be construed as a colorable claim for benefits

[under] § 502(a)(1)(B)." *Garber v. United Healthcare Corp.*, No. 15-cv-1638 (SJF) (GRB), 2016

WL 1734089, at *3 (E.D.N.Y. May 2, 2016) (quoting *Montefiore Med. Ctr.*, 642 F.3d at 328).

RMCO argues first that all of Mrs. Richard's claims are preempted by ERISA, as they all

"seek to establish a right to payment under the SERP and therefore implicate[] coverage and

benefits established by the plan." Pl.'s Mem. at 18.

As neither party disputes that Mrs. Richard is a party who could have brought a claim

under § 502(a)(1)(B), the Court turns to whether Mrs. Richard's claims could be construed as

colorable claims for benefits, and whether these claims proceed under circumstances in which

there is no other independent duty that is implicated by RMCO's actions.

Each of Mrs. Richard's counterclaims rests on the fact that she was allegedly due

payments under the SERP, but did not receive those payments. *See, e.g.*, Def.'s Answer at 8 (as

to her conversion claim, "[Mrs.] Richard was not paid the SERP payments and she relied upon

RMCO's misrepresentation(s) to her detriment"); *id.* at 9 (as to her breach of contract claim,

"[Mrs.] Richard was an intended third-party beneficiary of the SERP payments and the SERP,"

and "RMCO breached the SERP by failing and/or refusing to pay [Mrs.] Richard the SERP

payments owed to her [under] the terms of the SERP"); *id.* (as to her negligent misrepresentation

claim, "[b]ased upon RMCO's misrepresentation(s), [Mrs.] Richard was not paid the SERP

payments and she relied upon RMCO's misrepresentation(s) to her detriment"); *id.* at 10

("RMCO wrongfully took, obtained and/or withheld the SERP payments from [Mrs.] Richard");

and *id.* at 10 ("RMCO . . . represented that it did not have a copy of a beneficiary designation for

the SERP and/or that the 2010 [B]eneficiary [D]esignation was applicable to another plan/policy

for [Mr.] Richard").

Mrs. Richard sets forth two principal arguments that her claims are not preempted by ERISA: first, that RMCO owed an independent legal duty to her as an employee of RMCO, *see* Def.'s Opp'n to Pl.'s MSJ at 36-38, and second, that she seeks damages beyond merely the SERP benefits in the form of attorneys' fees, *see id.* at 38-39. Mrs. Richard relies on *Skaggs v. Subway Real Estate Corp.*, No. 3:03-cv-1412 (EBB), 2006 WL 1042337, at *5 (D. Conn. Apr. 19, 2006), to argue that because she requests attorneys' fees and "costs she was forced to incur" as a result of certain actions by RMCO and others, her counterclaims are not preempted by ERISA. *Id.* at 38-39.

This is unavailing.

In *Skaggs*, the plaintiff brought an interference action alleging that a defendant misused his corporate authority and interfered with business relations. *Skaggs*, 2006 WL 1042337, at *4-5. The court found that the claim was not preempted by ERISA for several reasons, including that the plaintiff had brought the action against an individual defendant, *id.* at *4, while Mrs. Richard's ERISA claims were brought against the corporate entity, and the "claim [was] not directly connected to the ERISA plan" but rather toward the individual defendant's actions, *id.* at *5. Additionally, the plaintiff there sought damages far beyond attorneys' fees, including "loss of employment, lost compensation, fringe benefits, and other rights, privileges, and conditions of her employment, an interruption of her career, pain and suffering, loss of enjoyment of life, and extreme emotional distress." *Id.* As a result, the court found that "[w]hile the employee benefit plan [wa]s a very important part of th[e] case, the interference claim could survive in the absence of such a benefit plan" and was therefore not preempted. *Id.* at *5.

Here, however, Mrs. Richard's claims all focus squarely on the SERP, which is made

clear by the fact that for each of the counterclaims she requests relief in the form of an

"injunction barring any further SERP payments to the [E]state," and "[a] declaration that [Mrs.]

Richard is entitled to all payments due under the SERP." *See* Def.'s Answer at 13-15. The only

damages Mrs. Richard seeks beyond that explicitly related to the SERP are attorneys' fees and

costs, punitive damages, and interest, *see id.,* all of which, to be awarded, would require a

finding that the SERP had been improperly distributed.

     As a result, because Mrs. Richard's claims "could [not] survive in the absence of [the

SERP]," *Skaggs*, 2006 WL 1042337, at *5, her counterclaims are preempted by ERISA. The

Court therefore need not, and does not, address the merits of her counterclaims.

     Accordingly, the Court therefore will dismiss each of Mrs. Richard's counterclaims

against RMCO.

### 2.  The Estate's Counterclaim

     The Estate sets forth a breach of contract counterclaim against RMCO on the grounds

that RMCO's cessation of SERP payments to the Estate has caused them to suffer damages.

Estate Answer at 6. The Estate seeks damages and prejudgment interest, as well as "[a]

declaration that the Estate is entitled to all payments due under the SERP." *Id.* at 7.

     RMCO argues that its failure to choose among adverse claimants cannot constitute a

breach of legal duty. *See* Pl.'s Mem. at 27-28.

     Because the Estate does not address its counterclaim, or oppose RMCO's arguments, in

its summary judgment papers, it may be deemed to have abandoned, or waived, this argument.

*See Galin v. Hamada*, No. 15-cv-6992 (JMF), 2016 WL 2733132, at *3 (S.D.N.Y. May 10,

2016) ("The one argument that the Court does reach now is Defendant's argument for dismissal

of Plaintiff's unjust-enrichment claim, to which Plaintiff did not respond in his opposition. In

light of that, the claim is dismissed as abandoned." (internal citation omitted) (citing *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005)).

Assuming arguendo that the Estate intends to stand on its argument, it "fails as a matter of law because [RMCO] did not breach its contract . . . by interpleading the [SERP] proceeds." *SPV-LS LLC v. Citron*, 2018 N.Y. Slip. Op. 30681(U), 2018 WL 1811656, at *10 (N.Y. Apr. 17, 2018); *see also Union Cent. Life Ins. v. Berger*, No. 10-cv-8408 (PGG), 2012 WL 4217795, at *12 n.13 (S.D.N.Y. Sept. 20, 2012), *aff'd*, 612 F. App'x 47 (2d Cir. 2015) ("To the extent that these counterclaims seek to predicate liability on [the interpleader's] refusal to pay over the Policy proceeds . . . [they] fail as a matter of law.") (internal citations omitted).

Accordingly, the Court will dismiss the Estate's counterclaim against RMCO.

### C.  Mrs. Richard's Motion to Amend her Answer

Finally, Mrs. Richard seeks leave to amend her Answer to "assert a counterclaim against RMCO under ERISA, 29 U.S.C. § 1132." Mot. to Amend at 1. Mrs. Richard argues that with her amendment, she "seeks to address RMCO's technical concern that [she] should have sought relief under ERISA as opposed to filing her state law causes of action." *Id.* at 4. RMCO opposes the motion on the grounds that Mrs. Richard's proposed ERISA claim is futile. *See* Pl.'s Obj. to Mot. to Amend at 3.

A proposed amendment is futile if it fails to state a claim that would survive a motion to dismiss. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The Court should dismiss claims for futility "only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (internal quotation marks omitted).

RMCO argues in support of its futility claim that Mrs. Richard has not asserted in her

43

proposed counterclaim that she has exhausted the plan's claims procedures, *see* Pl.'s Obj. to Mot. to Amend at 3; that RMCO intends to assert an affirmative defense that Mrs. Richard's claims are barred by the doctrine of laches, *see id.* at 4; and that the evidence, including Mrs. Richard's deposition, shows that Mrs. Richard never made an administrative claim, *id.* at 6. RMCO also argues that the proposed amended pleading fails under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to her failure to exhaust. *Id.* at 3-4.

As to RMCO's 12(b)(6) arguments – that Mrs. Richard has not asserted that she had exhausted claims procedures, that her claims are barred by the doctrine of laches, and that the evidence shows she made no administrative claim – these go to the merits of Mrs. Richard's proposed ERISA claim, rather than the sufficiency of the allegation, and therefore cannot render the pleading futile on its face. *See Max Impact, LLC v. Sherwood Grp., Inc.*, No. 09-cv-902 (LMM) (HBP), 2012 WL 3831535, at *4 (S.D.N.Y. Aug. 16, 2012); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). And "[m]aterials outside of the pleadings . . . cannot be considered on a motion for leave to amend." *Permatex, Inc. v. Loctite Corp.*, No. 03-cv-943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004); *see also Journal Publ'g Co. v. Am. Home Assur. Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991) ("Defendants' contention that the proposed amendments are futile is based largely on factual arguments going to the merits of plaintiffs' claims . . . [and] it is axiomatic that a court may not look beyond the face of the complaint on a motion to dismiss for failure to state a claim."). RMCO does not argue, nor does the Court find, that Mrs. Richard's proposed ERISA claim is facially deficient within its four corners.

As to RMCO's 12(b)(1) argument, the Second Circuit has repeatedly made clear that "a

failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006); *see also Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 546 F. App'x 2, 5 (2d Cir. 2013) ("[T]he exhaustion requirement under ERISA is not jurisdictional . . .").

RMCO also briefly argues that it has already been "prejudiced" by Mrs. Richard's "lack of diligence in bringing her claims and inexcusable and unreasonable delay." Pl.'s Obj. to Mot. to Amend at 4. Because the amended pleading arises from "the same circumstances and set of facts as the original" pleading, however, Mrs. Richard's limited amendment "is not likely to prejudice [RMCO] by resulting in the expenditure of 'significant additional resources.'" *Algonquin Gasoline, Inc. v. Petroleum & Franchise Cap., LLC*, No. 3:16-cv-00017 (VAB), 2016 WL 6089674, at *1 (D. Conn. Oct. 17, 2016) (quoting *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010)).

Because Mrs. Richard moves to amend the complaint after the deadline set forth in the scheduling order for the amendment of pleadings, *see* Scheduling Order, ECF No. 22 (Dec. 19, 2017) (setting a deadline of February 2, 2018), she also must show good cause to amend. *See* Fed. R. Civ. P. 16(b). Mrs. Richard argues that because the original scheduling order set forth a date of February 2, 2018, for the parties to file amended pleadings, but the Court did not rule on Mrs. Richard's motion to dismiss the Complaint until July 30, 2018, she did not have an opportunity to file an amended counterclaim within the Scheduling Order's deadline because it had already expired by the time her original Answer and counterclaims were due. Mot. to Amend at 6.

Ultimately, however, regardless of whether there is good cause to grant Mrs. Richard leave to file the proposed amended counterclaim, her proposed amended counterclaim is futile

for another reason: the absence of a viable claim for entitlement as a beneficiary for the SERP

funds, even if she did not have to exhaust her administrative remedies under ERISA. As

discussed above, there is no viable contract-based theory for her alleged entitlement to be

designated as a beneficiary under the SERP. As a result, allowing her to add a proposed amended

counterclaim only to reach this result at a later proceeding would be futile. It is "beyond doubt

that [she] can prove no set of facts in support of [her] amended claims." *Pangburn*, 200 F.3d at

71.

Accordingly, the Court will deny Mrs. Richard's motion for leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, RMCO's motion for summary judgment as to the interpleader

Complaint is **GRANTED**;

The Estate's motion for summary judgment as to both the interpleader Complaint and

Mrs. Richard's crossclaim is **GRANTED**;

RMCO's motion to dismiss Mrs. Richard's and the Estate's counterclaims is

**GRANTED**, and these claims are **DISMISSED**; and

Mrs. Richard's motion for leave to amend is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of January, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE